UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
                                              x
KENT J. RODRIGUEZ, Individually and on   :   Civil Action No. 1:21-cv-05739-PAE
Behalf of All Others Similarly Situated,  :
                                          :   CLASS ACTION
                Plaintiff,                :
                                          :
                                          :
      vs.                                 :
                                          :
DRAFTKINGS INC. f/k/a DIAMOND             :
EAGLE ACQUISITION CORP., JASON D.         :
ROBINS, JASON K. PARK, JEFF               :
SAGANSKY, and ELI BAKER,                  :
                                          :
                Defendants.               :
                                          :
                                              x
MICHAEL TEN HOORN, Individually and on   :   Civil Action No. 1:21-cv-06497-PAE
Behalf of All Others Similarly Situated,  :
                                          :   CLASS ACTION
                Plaintiff,                :
                                          :
                                          :
      vs.                                 :
                                          :
DRAFTKINGS INC. f/k/a DIAMOND             :
EAGLE ACQUISITION CORP., JASON D.         :
ROBINS, JASON K. PARK, JEFF               :
SAGANSKY, and ELI BAKER,                  :
                                          :
                Defendants.               :
                                              x
```

WALTER MARINO'S OPPOSITION TO COMPETING MOTIONS
FOR APPOINTMENT AS LEAD PLAINTIFF

4832-0526-8475.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     ARGUMENT........................................................................................................3

       A.      Rather than Establishing Financial Interest, Mr. Kaintz's Deficient
            Trading Data Confirms His Inability to Meet Rule 23's Adequacy
            Requirement ..............................................................................................3

       B.      Mr. Downs' Recoverable Losses Are Significantly Smaller than Mr.
            Marino's.....................................................................................................9

       C.      The "Most Adequate Plaintiff" Presumption Lies in Favor of Mr. Marino
            and Cannot Be Rebutted ..........................................................................12

       D.      The Remaining Movants Do Not Qualify for the PSLRA's Presumption.............13

III.    CONCLUSION...................................................................................................14

4832-0526-8475.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Afr. v. Jianpu Tech. Inc.*,
    2021 WL 1999467 (S.D.N.Y. May 19, 2021) ...........................................................................10

*Bhojwani v. Pistiolis*,
    2007 WL 9228588 (S.D.N.Y. July 31, 2007) ............................................................................9

*Camp v. Qualcomm Inc.*,
    2019 WL 277360 (S.D. Cal. Jan. 22, 2019)...............................................................................9

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005).............................................................................................................9, 10

*Garnett v. RLX Tech. Inc.*,
    2021 WL 3913541 (S.D.N.Y. Aug. 31, 2021)...........................................................................2

*In re Boeing Co. Aircraft Sec. Litig*,
    2020 WL 476658 (N.D. Ill. Jan. 28, 2020),
    *recons. denied by* 2020 WL 476658 (N.D. Ill. Jan. 28, 2020).................................................8

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)..............................................................................................12, 13

*In re LDK Solar Sec. Litig.*,
    255 F.R.D. 519 (N.D. Cal. 2009)...............................................................................................4

*In re LightInTheBox Holding Co., Ltd. Sec. Litig.*,
    2013 WL 6145114 (S.D.N.Y. Nov. 21, 2013),
    *recons. denied by* 2014 WL 129043 (S.D.N.Y. Jan. 14, 2014) ...............................................10

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
    2007 WL 2683636 (D.N.J. Sept. 7, 2007) .................................................................................9

*Karp v. Diebold Nixdorf, Inc.*,
    2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019),
    *adhering to on recons.* 2019 WL 6619341 (S.D.N.Y. Dec. 5, 2019) .......................................8

*Khunt v. Alibaba Grp. Holding Ltd.*,
    102 F. Supp. 3d 523 (S.D.N.Y. 2015)......................................................................................10

*Lax v. First Merchs. Acceptance Corp.*,
    1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ..............................................................................2

4832-0526-8475.v1

**Page**

*Li Hong Cheng v. Canada Goose Holdings Inc.*,
2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019) ...........................................................................8

*Micholle v. Ophthotech Corp.*,
2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) .........................................................1, 9, 10, 12

*Pelletier v. Endo Int'l PLC*,
2018 WL 3035745 (E.D. Pa. June 19, 2018) ........................................................................10

*Plaut v. Goldman Sachs Grp., Inc.*,
2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019)....................................................................8, 10

*Sallustro v. CannaVest Corp.*,
93 F. Supp. 3d 265 (S.D.N.Y. 2015).....................................................................................10

*Simco v. Aegean Marine Petroleum Network Inc.*,
2018 WL 11226076 (S.D.N.Y. Oct. 30, 2018) .....................................................................10

*Tomaszewski v. Trevena, Inc.*,
383 F. Supp. 3d 409 (E.D. Pa. 2019) ......................................................................................9

*Topping v. Deloitte Touche Tohmatsu CPA*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015).....................................................................................10

*Tsirekidze v. Syntax-Brillian Corp.*,
2008 WL 942273 (D. Ariz. Apr. 7, 2008) ..............................................................................7

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78u-4(a)(3)(B)(iii)(I) ............................................................................................................1
§78u-4(a)(3)(B)(iii)(I)(cc)......................................................................................................12

Federal Rules of Civil Procedure
Rule 23 ............................................................................................................ *passim*

4832-0526-8475.v1

## I.    INTRODUCTION

Six lead plaintiff motions were filed by investors seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *See* ECF Nos. 9, 12, 15, 17, 18, 24.  Under the PSLRA, courts are to "adopt a presumption that the most adequate plaintiff" is the person that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  While two other movants claim to have suffered larger losses than Walter Marino, neither of them can trigger  the "most adequate plaintiff" presumption.

Tim Kaintz, the movant claiming the largest loss, submitted a materially deficient sworn Certification that inexplicably omits "*all* of [his] transactions in DraftKings securities during the Class Period" as the PSLRA unambiguously requires.[1]  ECF No 21-1.  Indeed, when compared to his counsel-prepared loss chart, it is readily apparent that the latter identifies a multitude of *additional* transactions not identified in his Certification that are used to estimate his purported "financial interest in the relief sought by the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Beyond Mr. Kaintz's contradictory (and unreliable) financial interest evidence, there are a host of errors and deficiencies permeating his financial interest calculation regarding the transactions types, share amounts, and prices at which he traded which render Kaintz's financial interest wholly unreliable (and unverifiable) and "render [Kaintz] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement." *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (disqualifying movant based on errors and discrepancies in his financial interest showing).  As such, Kaintz's motion should be denied for his failure to timely establish a financial interest ***and***

---

[1]    All emphasis is added and all citations are omitted unless otherwise noted.

4832-0526-8475.v1

because the obvious errors and inconsistencies in his submission undermine his ability to satisfy Rule 23's adequacy requirements.

Robert Downs also claims that he suffered a larger loss than Mr. Marino, yet the lion's share of Mr. Downs' claimed loss (over 75%) is not recoverable because it was incurred *before* the sole alleged disclosure of defendants' fraudulent conduct in this case. Courts in this District and Circuit hold that such movants – who incurred their losses before the disclosure of the alleged fraud – cannot claim the pre-disclosure losses as part of their financial interest in the relief sought by the class for lead plaintiff purposes. When adjusted to exclude losses which are plainly non-recoverable, Downs' actual financial interest is only $99,501 – less than half of Marino's recoverable loss. As such, he cannot trigger the PSLRA's "most adequate plaintiff" presumption.

| | *Lax #1*[2] | *Lax #2* | *Lax #3* | *Lax #4* | |
|---|---|---|---|---|---|
| Movant | Total Shares Purchased | Net Shares Purchased | Net Funds Expended | Loss (Claimed) | Loss (Recoverable) |
| Mr. Marino | 149,058 shares+ 8,347 options contracts | 15,000 shares + 3,564 options contracts | $978,859 | $217,456 | $217,456 |
| Mr. Goering | 12,000 | 12,000 | $764,000 | $154,877 | $154,877 |
| Mr. Downs | 178,100 | 6,500 | $741,431 | $424,946 | $99,501 |

---

[2] "In determining who has the largest financial stake in the litigation, courts in this Circuit have traditionally applied a four-factor test, first set forth in *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715 (DHC), 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). These *Lax* factors include: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered." *Garnett v. RLX Tech. Inc.*, 2021 WL 3913541, at *4 (S.D.N.Y. Aug. 31, 2021).

4832-0526-8475.v1

| Mr. Mendoza | 5,559 | 3,233 | $198,174 | $33,560 | $33,560 |
|---|---|---|---|---|---|
| Mr. Ernst | 3,900 shares + 131 options contracts | 1,000 | $67,901 | $20,926 | $18,096 |
| Mr. Kaintz | ??? | ??? | ??? | ??? | ??? |

In contrast, Mr. Marino possesses a recoverable financial interest of $217,456 and he readily satisfies the Rule 23 requirements.  Since Stephen Goering, Robert Mendoza, and Mario E. Ernst all claim to have significantly smaller financial interests than that of Marino, their motions should be denied because they cannot prove that Marino should not be appointed.

## II.    ARGUMENT

### A.    Rather than Establishing Financial Interest, Mr. Kaintz's Deficient Trading Data Confirms His Inability to Meet Rule 23's Adequacy Requirement

Immediately upon comparing Mr. Kaintz's sworn PSLRA Certification (ECF No 21-1) to his counsel-prepared loss chart (ECF No. 21-2), it is apparent that Kaintz's trading data is internally inconsistent and littered with incomplete and inaccurate information.  These substantive deficiencies, which affect hundreds of transactions and cannot be fairly characterized as mere scrivener's errors, undermine the ability of the Court and other class members to make an assessment of Kaintz's true financial interest as the PSLRA requires.  Separately, Kaintz's failure to competently evidence his Class Period transactions in DraftKings securities is proof of his *in*ability to meet Rule 23's adequacy requirement, even on a *prima facie* basis.

Mr. Kaintz's Certification – which is submitted to this Court under penalty of perjury – avers that: "The attached sheet (Schedule 'A') lists *all* of my transactions in DraftKings securities during the Class Period, as specified in the Complaint."  Kaintz *re*-affirms the accuracy of these representations in his Declaration (ECF No. 21-3), which cites to the "substantial losses" evidenced

- 3 -

by his PSLRA Certification as his reason for being "motivated to seek the best possible result for [him]self and the proposed class." *Id.* at ¶3. Those statements are verifiably false. Indeed, the counsel-prepared loss chart contains nearly 200 additional transactions which are not identified (or sworn to) on the Certification and contradicts the substance of the data sworn to in the Certification.

To start, while the loss chart indicates that Mr. Kaintz was an extensive options trader throughout the Class Period, ***all of the options transactions*** (more than 100 total transactions) are omitted from his sworn PSLRA Certification. *Compare* ECF No. 21-1 (Certification not listing any options transactions) *with* ECF No 21-2 at 17-19 of 37 (loss chart calculating Kaintz's financial interest based on, *inter alia*, three pages of options trades). If his loss chart is to be believed, Kaintz engaged in a pervasive pattern of ***selling*** call options using a strategy designed to limit his downside exposure to DraftKings securities. *See In re LDK Solar Sec. Litig*., 255 F.R.D. 519, 533 (N.D. Cal. 2009) ("Selling call options is functionally similar to selling a stock short – both involve betting that the stock's price will fall rather than rise."). Kaintz's election to omit these options trades from his Certification – which cumulatively netted him ***a profit*** of over $1.1 million –resulted in his loss being overstated almost 50%.[3]

Aside from Mr. Kaintz's self-serving omissions of his options gains from his PSLRA Certification, there are also millions of dollars' worth of purchases and sales of DraftKings common stock listed in Kaintz's loss chart (and accompanying financial interest calculation) that are simply absent from Kaintz's Certification:

---

[3]    Assuming, *arguendo*, the loss chart is accurate, Mr. Kaintz's failure to account for his options sales (and the substantial gains he derived therefrom) in his Certification gives rise to the concern that he cannot be relied upon to represent the interests of those class members (like Mr. Marino) who incurred losses on options trades. In fact, Kaintz has every incentive to avoid offsetting his common stock losses with $1.1 million in options gains and exclude options traders from any plan of allocation and recovery.

4832-0526-8475.v1

| Transaction Type | Transaction Date | Number of Shares | Transaction Price |
|---|---|---|---|
| BUY | 11/17/2020 | 736 | 44.71 |
| SELL | 11/17/2020 | 736 | 44.87 |
| BUY | 11/18/2020 | 10000 | 47.2 |
| BUY | 11/18/2020 | 10000 | 47.11 |
| SELL | 11/18/2020 | 20000 | 47.58 |
| BUY | 11/18/2020 | 20000 | 47.22 |
| SELL | 11/18/2020 | 100 | 47.67 |
| SELL | 11/18/2020 | 1300 | 47.66 |
| SELL | 11/18/2020 | 9 | 47.65 |
| SELL | 11/18/2020 | 85 | 47.61 |
| SELL | 11/18/2020 | 1311 | 47.6 |
| SELL | 11/18/2020 | 235 | 47.59 |
| SELL | 11/18/2020 | 100 | 47.58 |
| SELL | 11/18/2020 | 16860 | 47.55 |
| BUY | 11/18/2020 | 20000 | 47.26 |
| SELL | 11/18/2020 | 1 | 47.39 |
| SELL | 11/18/2020 | 1 | 47.37 |
| SELL | 11/18/2020 | 535 | 47.35 |
| SELL | 11/18/2020 | 2000 | 47.34 |
| SELL | 11/18/2020 | 9000 | 47.34 |
| SELL | 11/18/2020 | 8463 | 47.33 |
| BUY | 11/18/2020 | 30000 | 47.12 |
| SELL | 11/18/2020 | 30000 | 47.15 |
| BUY | 11/18/2020 | 20000 | 48.63 |
| SELL | 11/18/2020 | 20000 | 48.71 |
| SELL | 12/3/2020 | 10000 | 51 |
| BUY | 12/3/2020 | 10000 | 50.9 |

While these discrepancies are enough to preclude class members and the Court from independently ascertaining Mr. Kaintz's financial interest, the deficiencies in his trading submissions do not end there.  There are transactions *listed as sales* on both Kaintz's Certification *and* loss chart that are ***treated as purchases for loss calculation purposes*** in the loss chart.  For example, on November 23, 2020, Kaintz's Certification and loss chart describe a series of three transactions involving 19,700 shares as *sales*; the loss chart appears to treat the second transaction as an

- 5 -

offsetting purchase (as indicated by the parenthetical red numbers on the far right column), thereby

exaggerating Kaintz's exposure to the securities at issue:

| 11/23/2020 | Sold | 19,700 | $44.00 |
| 11/23/2020 | Sold | 19,700 | $44.00 |
| 11/23/2020 | Sold | 19,700 | $44.00 |

* * * *

| 61 | Sold 19700 DKNG @ 44 | 11/23/2020 | $ 44.00 | - | 19,700 | (19,700) | - | 866,800 | 866,800 |
| 61 | Sold 19700 DKNG @ 44 | 11/23/2020 | $ 44.00 | 19,700 | - | - | 866,800 | - | (866,800) |
| 62 | Sold Short 19700 DKNG @ 44 | 11/23/2020 | $ 44.00 | - | 19,700 | (19,700) | - | 866,800 | 866,800 |

*See* ECF No. 21-2 at 26 of 37 (using 19,700 as "quantity purchased" at a "total cost" of $866,800 for

class calculation purposes).

Mr. Kaintz also engaged in significant short selling activity during the Class Period, a fact

which he altogether omitted from the transactions listed in his sworn Certification.  While Kaintz did

include several of his short sale transactions on his Certification as simply "sales," he omitted the

disclosure of other short sales (and buys to cover) entirely:

| BUY TO COVER | 11/17/2020 | 49264 | 44.71 |
| SHORT SELL | 11/17/2020 | 800 | 44.92 |
| SHORT SELL | 11/17/2020 | 502 | 44.91 |
| SHORT SELL | 11/17/2020 | 200 | 44.9 |
| SHORT SELL | 11/17/2020 | 700 | 44.89 |
| SHORT SELL | 11/17/2020 | 700 | 44.88 |
| SHORT SELL | 11/17/2020 | 5105 | 44.87 |
| SHORT SELL | 11/17/2020 | 41557 | 44.86 |
| SHORT SELL | 11/17/2020 | 20000 | 44.99 |
| BUY TO COVER | 11/18/2020 | 1000 | 47.52 |
| BUY TO COVER | 11/18/2020 | 10000 | 47.57 |
| BUY TO COVER | 11/18/2020 | 10000 | 47.5 |
| BUY TO COVER | 11/18/2020 | 10000 | 47.5 |
| BUY TO COVER | 11/18/2020 | 10000 | 47.5 |
| BUY TO COVER | 11/18/2020 | 5000 | 47.45 |
| BUY TO COVER | 11/18/2020 | 10000 | 47.4 |
| BUY TO COVER | 11/18/2020 | 13564 | 47.3 |

- 6 -

*See* ECF No. 21-2.[4]

Compounding the confusion as to what Mr. Kaintz's real financial interest in this case truly is, there are inconsistencies in the number of shares purchased in the dueling submissions. *Compare, e.g.*, ECF No 21-1 (Certification showing purchases of 4,1<u>61</u> shares on 3/11/2021 and 3,<u>381</u> shares on 3/17/2021) *with* ECF No. 21-2 at 12-13 of 37 (loss chart showing purchases of 4,1<u>64</u> shares on 3/11/2021 and 3,<u>881</u> shares on 3/17/2021). Kaintz's sales of stock on 3/24/2021 for $69.75 illustrate why such errors are not *de minimis* technicalities, but rather render Kaintz's entire trading data unreliable: his PSLRA Certification asserts that he only sold 2,000 DraftKings shares on that day and price (which would yield proceeds of $139,500), whereas the loss chart maintains that he sold 20,000 DraftKings shares on that day and price (which would yield proceeds of *$1,395,000*). Which is it?

| Date | Action | Shares | Price |
|---|---|---|---|
| 3/24/2021 | Bought | 100 | $69.588 |
| 3/24/2021 | Bought | 100 | $69.58 |
| 3/24/2021 | Sold | 2,000 | $69.75 |
| 3/24/2021 | Bought | 30,000 | $69.65 |
| 3/24/2021 | Bought | 20,000 | $69.28 |

\* \* \* \*

| | | | | | | |
|---|---|---|---|---|---|---|
| 536 | Bought 200 DKNG @ 69.59 | 3/24/2021 | $ | 69.59 | 200 | - |
| 537 | Bought 100 DKNG @ 69.588 | 3/24/2021 | $ | 69.59 | 100 | - |
| 538 | Bought 100 DKNG @ 69.58 | 3/24/2021 | $ | 69.58 | 100 | - |
| 539 | Sold 20000 DKNG @ 69.75 | 3/24/2021 | $ | 69.75 | - | 20,000 |
| 540 | Bought 30000 DKNG @ 69.65 | 3/24/2021 | $ | 69.65 | 30,000 | - |
| 541 | Bought 20000 DKNG @ 69.28 | 3/24/2021 | $ | 69.28 | 20,000 | - |

---

[4]    It is ironic that in anticipation of an argument that Mr. Kaintz engaged in atypical trading strategies, his memorandum of law in support of his lead plaintiff motion urges the Court to rely on the statements that Kaintz "specifically sworn" to in his lead plaintiff application as the basis for rejecting such arguments. *See* ECF No. 23 at 10 ("While he purchased and sold significant amounts of the Stock and traded some options during the Class Period, he has specifically sworn that his purchases were made 'based on my analysis of the stock.'"). What Kaintz overlooks is that "[w]hile a day trader is not ipso facto disqualified from the lead plaintiff role, [Kaintz's] unique trading pattern *combined with questions about adequacy* establish that [he] should not represent the class." *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008).

- 7 -

*See* ECF No. 21-1 at 15 of 17; ECF No. 21-2 at 15 of 37.

Mr. Kaintz's inability to file a sworn certification that accurately reflects his transactions in the securities at issue is – at best – indicia that he lacks the requisite sophistication and care to be placed in a position of trust as a fiduciary to absent class members. As was the case in *In re Boeing Co. Aircraft Sec. Litig*, 2020 WL 476658, at \*5 (N.D. Ill. Jan. 28, 2020), *recons. denied by* 2020 WL 476658 (N.D. Ill. Jan. 28, 2020), "[o]ne of two things happened here: either [Kaintz] reviewed the loss charts and neglected to correct them despite errors that should have been obvious to [him] based on [his] own trading, or [he] didn't review the loss charts at all." *Id.* "Under either scenario, [his] failure to discover these obvious errors independently warrants a determination that [Kaintz] will not be [an] adequate representative[] of the class." *Id.* (collecting cases). Indeed, Courts in this district have found far less egregious errors, even when timely corrected by counsel, to be disqualifying. *See Plaut v. Goldman Sachs Grp.*, *Inc.*, 2019 WL 4512774, at \*5 (S.D.N.Y. Sept. 19, 2019) (disqualifying movant for omitting certain transactions from certification which would serve to increase that movant's loss, finding that "[a]lthough Meitav submits that this clerical error was a 'minor defect[ ],' . . . this error 'nonetheless speak[s] to a level of carelessness,' and causes me 'to doubt whether [Meitav] possesses the necessary adequacy and sophistication to be lead plaintiff'"); *Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at \*6 (S.D.N.Y. Oct. 30, 2019), *adhering to on recons.* 2019 WL 6619341 (S.D.N.Y. Dec. 5, 2019) (denying motion by movant with larger financial interest and concluding that the "Court is disquieted by the errors contained in [movant's] original submissions" which "took the [movant] nearly two weeks [to correct]" because the certification "struck at the core of the PSLRA's lead plaintiff inquiry"); *Li Hong Cheng v. Canada Goose Holdings Inc.*, 2019 WL 6617981, at \*6 n.7 (S.D.N.Y. Dec. 5, 2019) (disqualifying movant who failed to list a case in which he sought lead plaintiff status in his PSLRA Certification, finding that

- 8 -

"[e]ven if [movant] had the largest financial interest in this action, I find that '[t]he certification errors in [movant's] submissions "militate against appointment and render [him] inadequate to serve as lead plaintiff under Rule 23's adequacy requirement."'"); *Bhojwani v. Pistiolis*, 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) (finding that discrepancies in certification "indicate[] a certain carelessness about detail that undermines the adequacy of [the movant] as a lead plaintiff").[5]

Separately, courts have found that the failure to correct such statements reflects upon a lead plaintiff movant's ability to demonstrate that it selected qualified and experienced counsel. *See, e.g.*, *Micholle*, 2018 WL 1307285, at *9 (denying individual's lead plaintiff motion and finding that the "errors in his submissions . . . militate against appointment and render him inadequate to serve as lead plaintiff under Rule 23's adequacy requirement" and that "these errors and discrepancies" result in a finding that he "***has failed to demonstrate that [he] has selected counsel that is qualified and experienced as required under Rule 23***").

## B.   Mr. Downs' Recoverable Losses Are Significantly Smaller than Mr. Marino's

It is axiomatic that under the Supreme Court's holding in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 344 (2005), plaintiffs in securities fraud actions can recover only those losses that are proximately caused by fraud. *Id.* at 342, 345-46 (If, however, "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

---

[5]   *See also Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414-15 (E.D. Pa. 2019) (finding that "[s]worn declarations are integral to the PSLRA process" and "the errors in [movant]'s sworn statements amount to a substantial degree of carelessness and raise doubt as to whether he will fairly and adequately represent the best interests of the class" "[p]articularly given that these errors were made at the outset of the case"); *Camp v. Qualcomm Inc.*, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (finding a movant inadequate where movant's certification contained "'errors in the transaction records'"); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, 2007 WL 2683636, at *8 n.8 (D.N.J. Sept. 7, 2007) (denying motion by movant whose certification was "plagued with misinformation" and contained "misleading trading data").

4832-0526-8475.v1

Consequently, "[c]ourts consider only recoverable losses when calculating financial loss for the purpose of selecting lead plaintiff." *Micholle*, 2018 WL 1307285, at *5 (collecting cases). In fact, Judge Furman in *Afr. v. Jianpu Tech. Inc.*, 2021 WL 1999467, at *2 (S.D.N.Y. May 19, 2021), found that "the Court agrees with the weight of authority in this Circuit that it 'would be abdicating its responsibility under the PSLRA if it were to ignore the issue of loss causation at the lead plaintiff appointment stage.'" *Id.* (citing *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015)).[6] Thus, it is plain that "[a]ny losses incurred based on 'in-and-out' trades – where an investor buys stock and sells it during the class period but before any disclosures – should not be considered." *Id*. at *5 (citing *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 618 (S.D.N.Y. 2015)).

Here, the first complaint was filed by Mr. Downs' proposed lead counsel on behalf of a different plaintiff, alleging that the truth behind defendants' alleged fraud was revealed no earlier than June 15, 2021, when Hindenburg Research published a report alleging that DraftKings' "merger with SBTech exposed DraftKings to dealings in black-market gaming." ECF No. 1 at ¶5. Removing any doubt that Downs adopted his counsel's allegations, Downs also identified the June

---

[6]    *See Plaut,* 2019 WL 4512774, at *4 ("under *Dura*, I am inclined to exclude in-and-out transactions prior to the first alleged corrective disclosure, i.e., those 'losses that [each movant] may have incurred before [Defendants'] misconduct was ever disclosed to the public'"); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) (same); *In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, 2013 WL 6145114, at *3 (S.D.N.Y. Nov. 21, 2013), *recons. denied by* 2014 WL 129043 (S.D.N.Y. Jan. 14, 2014) (excluding pre-corrective disclosure losses from financial interest inquiry, finding that "[u]nder *Dura* . . . such losses are not recoverable in a securities fraud action because the losses are not proximately caused by the defendant's misstatements"); *Simco v. Aegean Marine Petroleum Network Inc.*, 2018 WL 11226076, at *2 (S.D.N.Y. Oct. 30, 2018) ("[l]osses resulting from shares sold prior to corrective disclosures are not considered in evaluating a movant's financial interests"); *see generally Pelletier v. Endo Int'l PLC*, 2018 WL 3035745, at *2 (E.D. Pa. June 19, 2018) ("What the plaintiffs lost is what they may recover. Including losses that were incurred before any disclosure could not have been caused by any disclosures and are not recoverable. Thus, those shares are not included in the 'largest financial interest' calculus.").

4832-0526-8475.v1

15, 2021 Hindenburg Research report as the first (and only) corrective disclosure in his memorandum of law in support of his motion for appointment as lead plaintiff. *See* ECF No. 20 at 3-4. The problem for Downs is that he sold all but 6,500 shares of DraftKings stock by June 9, 2021, ***nearly a week before the release of the Hindenburg Research report***:

| | Dates | Event |
|---|---|---|
| ***IN*** | 11/18/2020 | Downs purchases 25,000 DraftKings shares. *See* ECF No. 22-1. |
| ***OUT*** | 11/25/2020 | Downs sells ***all*** 25,000 of his DraftKings shares seven months ***before*** any corrective disclosure. *See id.* |

| | Dates | Event |
|---|---|---|
| ***IN/OUT*** | 12/22/2020 | Downs re-enters DraftKings, purchasing 50,000 shares and selling all 50,000 shares the same day, approximately six months before any corrective disclosure. |

| | Dates | Event |
|---|---|---|
| ***IN*** | 3/4/2021 – 6/9/2021 | Downs purchases 103,100 DraftKings shares. *See* ECF No. 22-1. |
| ***93% OUT*** | 3/4/2021 – 6/9/2021 | Downs sells ***96,600*** of his DraftKings shares at least a week before any corrective disclosure. *See id.* |

| | Dates | Event |
|---|---|---|
| | 6/15/2021 | *The sole corrective disclosure alleged in the case. See* ECF No. 1 at ¶¶49-56 (Downs' counsel's complaint detailing when "The Truth Emerges"); ECF No. 20 at 3 (Downs alleging a single corrective disclosure on June 15, 2021). <br><br>***Downs held 6,500 shares through this corrective disclosure***. |

| | Dates | Event |
|---|---|---|
| ***7% OUT*** | 6/18/2021 | Downs sells his remaining 6,500 shares for $48.69 per share. |

Because Mr. Downs liquidated all but 6,500 shares of his DraftKings common stock by June 9, 2021 – well ***before*** the sole corrective disclosure under his own theory of the case – any market loss he suffered in connection with the other 171,600 shares purchased and sold during the Class Period are not recoverable and he cannot claim those as part of his "financial interest in the relief sought by the class" for lead plaintiff purposes.

- 11 -

4832-0526-8475.v1

Moreover, Mr. Downs' recoverable loss on his 6,500 damaged shares is $99,501 – far less than Mr. Marino's $217,456 loss.  On this basis, Downs is not entitled to presumptive lead plaintiff status.

### C. The "Most Adequate Plaintiff" Presumption Lies in Favor of Mr. Marino and Cannot Be Rebutted

Because both of the movants who claimed a larger financial interest do not satisfy the PSLRA's requirements, the Court must "repeat this process until a presumptive lead plaintiff is identified." *In re Cendant Corp. Litig*., 264 F.3d 201, 267 (3d Cir. 2001).  With losses of over $217,456 – all of which are recoverable – that movant is Mr. Marino.

Since Mr. Kaintz and Mr. Downs do not qualify for presumptive lead plaintiff status, the Court "should then identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified." *Id.* at 267.  Of the remaining movants, with losses of approximately $217,456, all of which are recoverable, Mr. Marino has the greatest financial interest in the relief sought by the class and therefore is the presumptively most adequate plaintiff.

Aside from having the largest financial interest of any remaining movant, the PSLRA requires that, to be designated the presumptively most adequate plaintiff, Mr. Marino must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  There is no question that Marino satisfies these requirements. *See* ECF No. 25 at 4-8.  Indeed, it is likely that "[t]he only arguments offered by the [competing movants] with respect to [Marino] are based on [Marino's] smaller financial losses." *Micholle*, 2018 WL 1307285, at \*10 (assessing movants' financial interests based on recoverable losses and disqualifying movant with errors in his submission).

- 12 -

Moreover, Mr. Marino has provided the Court with a Declaration setting forth his ability and willingness to serve as a lead plaintiff, his business leadership experience, his role as a fund manager of a real estate private equity firm in the Tri-State Area, and his familiarity hiring and overseeing attorneys. *See* ECF No. 26-4.

Because Mr. Marino has the largest financial interest and satisfies Rule 23's requirements, he is presumptively the "most adequate plaintiff."

### D. The Remaining Movants Do Not Qualify for the PSLRA's Presumption

All of the remaining movants claim smaller losses than Mr. Marino:

| Remaining Movant | Claimed Loss |
|---|---|
| Stephen Goering | $154,877 |
| Robert Mendoza | $33,560 |
| Mario E. Ernst | $20,926 |

Accordingly, the Court should not consider their motions unless the presumption in favor of appointing Mr. Marino has been rebutted. *See Cendant*, 264 F.3d at 222 (the presumption "'may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class'"). Here, because Marino is willing to serve and satisfy Rule 23's requirements, the competing motions should be denied.

- 13 -

## III.    CONCLUSION

None of the competing movants trigger the PSLRA's most adequate plaintiff presumption. As such, their motions should be denied.  By contract, Mr. Marino suffered the greatest loss of any movant that satisfies the Rule 23 requirements as this stage and his motion should be granted.

DATED:  September 15, 2021                     Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD

*s/ David A. Rosenfeld*
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

- 14 -

4832-0526-8475.v1

# Mailing Information for a Case 1:21-cv-05739-PAE Rodriguez v. Draftkings Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Brian T. Frawley**
  Frawleyb@Sullcrom.Com,brian-frawley-1057@ecf.pacerpro.com,s&cmanagingclerk@sullcrom.com

- **Devin Freedman**
  vel@rochefreedman.com,ECF_Notifications@rcfllp.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com,asoto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Shannon Lee Hopkins**
  shopkins@zlk.com,shalliday@zlk.com,ecf@zlk.com

- **Phillip C. Kim**
  pkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,ahood@pomlaw.com,asoto@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com

- **Gregory Bradley Linkh**
  glinkh@glancylaw.com,info@glancylaw.com,greg-linkh-2000@ecf.pacerpro.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Timothy Jason Weinstein**
  weinsteint@sullcrom.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)