# Exhibit A

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movants*
*and Proposed Lead Counsel for the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN DOHERTY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PIVOTAL SOFTWARE, INC., ROBERT MEE, and CYNTHIA GAYLOR,<br><br>Defendants. | Case No.: 3:19-cv-03589-CRB<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL<br><br><u>CLASS ACTION</u><br><br>Date: October 11, 2019<br>Time: 10:00 a.m.<br>Judge: Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor |

| | |
|---|---|
| MIKEBEB M. ABERA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PIVOTAL SOFTWARE, INC.; ROBERT MEE; CYNTHIA GAYLOR; PAUL MARITZ; MICHAEL S. DELL; ZANE ROWE; EGON DURBAN; WILLIAM D. GREEN; MARCY S. KLEVORN; KHOZEMA Z. SHIPCHANDLER; MORGAN STANLEY & CO. LLC; GOLDMAN SACHS & CO. LLC; CITIGROUP GLOBAL MARKETS INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED; BARCLAYS CAPITAL INC.; CREDIT SUISSE SECURITIES (USA) LLC; RBC CAPITAL MARKETS, LLC; UBS SECURITIES LLC; WELLS FARGO SECURITIES, LLC; KEYBANC CAPITAL MARKETS INC.; WILLIAM BLAIR & COMPANY, LLC; MISCHLER FINANCIAL GROUP, INC.; SAMUEL A. RAMIREZ & COMPANY, INC.; SIEBERT CISNEROS SHANK & CO.; LLC; and WILLIAMS CAPITAL GROUP, L.P.,<br><br>Defendants. | Case No.: 4:19-cv-03601-HSG<br><br>CLASS ACTION |

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL - 3:19-cv-03589-CRB; 4:19-cv-03601-HSG; 3:19-cv-03605-RS

| PETER KLEINMAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> v. <br><br> PIVOTAL SOFTWARE, INC.; ROBERT MEE; CYNTHIA GAYLOR; PAUL MARITZ; MICHAEL S. DELL; ZANE ROWE; EGON DURBAN; WILLIAM D. GREEN; MARCY S. KLEVORN; KHOZEMA Z. SHIPCHANDLER; MORGAN STANLEY & CO. LLC; GOLDMAN SACHS & CO. LLC; CITIGROUP GLOBAL MARKETS INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED.; BARCLAYS CAPITAL INC.; CREDIT SUISSE SECURITIES (USA) LLC; RBC CAPITAL MARKETS, LLC; UBS SECURITIES LLC; WELLS FARGO SECURITIES, LLC; KEYBANC CAPITAL MARKETS INC.; WILLIAM BLAIR & COMPANY, L.L.C.; MISCHLER FINANCIAL GROUP, INC.; SAMUEL A. RAMIREZ & COMPANY, INC.; SIEBERT CISNEROS SHANK & CO., L.L.C.; and WILLIAMS CAPITAL GROUP, L.P., <br><br> Defendants. | Case No.: 3:19-cv-03605-RS <br><br> CLASS ACTION |
| --- | --- |

<u>**TABLE OF CONTENTS**</u>

**PRELIMINARY STATEMENT** .................................................................................................1

**ARGUMENT**.............................................................................................................................5

**I.      THE RETIREMENT FUNDS' ATTACKS ON THE FITNESS OF THE
        PIVOTAL INVESTOR GROUP ARE WITHOUT MERIT** ......................................5

     **A.      The Pivotal Investor Group Is An Appropriate Group** ......................5

     **B.      Both Members Of The Pivotal Investor Group Have Standing To
                Pursue Securities Act Claims**.................................................................6

     **C.      Doherty Is A Typical And Adequate Class Representative** .................7

     **D.      Tech Trader Is A Typical And Adequate Class Representative**..........7

     **E.      Discovery Into The Retirement Funds' Baseless Allegations Is
                Unwarranted** ........................................................................................13

**II.     CONCLUSION** .........................................................................................................15

Case 3:19-cv-03589-CRB Document 54 Filed 09/15/21 Page 5 of 24

**Page(s)**

**Cases**

*Abbey v. Computer Memories, Inc.*,
  634 F. Supp. 870 (N.D. Cal. 1986) ...................................................................................... 7

*Armour v. Network Assocs.*,
  171 F. Supp. 2d 1044 (N.D. Cal. 2001) ....................................................................... 1, 2, 7

*Borenstein v. Finova Group*,
  Nos. CIV 00-619-PHX-SMM *et al.*, 2000 U.S. Dist. LEXIS 14732 (D. Ariz.
  Aug. 30, 2000) ................................................................................................................... 13

*Bruce v. Suntech Power Holdings Co., Ltd.*,
  No. CV 12-04061 RS, 2012 U.S. Dist. LEXIS 167702 (N.D. Cal. Nov. 13,
  2012) .................................................................................................................................... 5

*Chill v. Green Tree Fin. Corp.*,
  181 F.R.D. 398 (D. Minn. 1998)........................................................................................... 8

*City of Marysville Gen. Emples. Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*,
  No. CV 09-659-EJL-CWD, 2010 U.S. Dist. LEXIS 41991 (D. Idaho Apr. 29,
  2010) .................................................................................................................................... 8

*Eichenholtz v. Verifone Holdings, Inc.*,
  No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22,
  2008) .................................................................................................................................. 14

*Ferrari v. Impath, Inc.*,
  03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004) ................... 13

*Feyko v. Yuhe Int'l Inc.*,
  No. CV 11-05511 DDP, 2012 U.S. Dist. LEXIS 28040 (N.D. Cal. Mar. 2,
  2012) ................................................................................................................................. 1, 2

*Hayes v. MagnaChip Semiconductor Corp.*,
  No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS 177787 (N.D. Cal. Dec. 22,
  2016) .................................................................................................................................. 11

*In re Cephalon Sec. Litig.*,
  No. 96-0633, 1998 U.S. Dist. LEXIS 12321 (E.D. Pa. Aug. 11, 1998) ............................... 11

*In re Versata, Inc.*,
  Nos. C 01-1439 SI *et al.*, 2001 U.S. Dist. LEXIS 24270 (N.D. Cal. Aug. 17,
  2001) .................................................................................................................................... 5

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH
TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND
APPROVAL OF COUNSEL - 3:19-cv-03589-CRB; 4:19-cv-03601-HSG; 3:19-cv-03605-RS

*In re Versata, Inc.*,
    Nos. C 01-1439 SI *et al.*, 2001 U.S. Dist. LEXIS 24270 (N.D. Cal. Aug. 17,
    2001) ..............................................................................................................................................2

*In re Zynga, Inc. Sec. Litig.*,
    No. C 12-04007 JSW, 2013 U.S. Dist. LEXIS 9314 (N.D. Cal. Jan. 22, 2013).....................9

*Khunt v. Alibaba Group Holding Ltd.*,
    102 F. Supp. 3d 523 (S.D.N.Y. 2015)..................................................................................13

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
    No. 13-CV-05368-LHK, 2014 U.S. Dist. LEXIS 80141 (N.D. Cal. June 10,
    2014) ......................................................................................................................................5

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
    63 F. Supp. 3d 394 (D. Del. 2014)...................................................................................9, 11

*Richardson v. TVIA, Inc.*,
    No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16,
    2007) ....................................................................................................................................11

*Robb v. Fitbit Inc.*,
    No. 16-cv-00151-SI, 2016 U.S. Dist. LEXIS 62457 (N.D. Cal. May 10,
    2016) ......................................................................................................................................5

*Serafimov v. Netopia, Inc.*,
    No. C-04-03364 RM, 2004 U.S. Dist. LEXIS 25184 (N.D. Cal. Dec. 3, 2004) .................9

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..............................................................................................10

*Sudunagunta v. Nantkwest, Inc.*,
    No. CV-16-1947-MWF, 2018 U.S. Dist. LEXIS 137084 (C.D. Cal. Aug. 13,
    2018) ..................................................................................................................................3, 6

*Welgus v. Trinet Grp., Inc.*,
    No. 15-cv-03625-BLF, 2017 U.S. Dist. LEXIS 6347 (Jan. 17, 2017) ..................................6

*Woburn Ret. Sys. v. Omnivision Techs., Inc.*,
    Nos. 5:11-CV-05235-RMW *et al.*, 2012 U.S. Dist. LEXIS 21590 (N.D. Cal.
    Feb. 21, 2012) .....................................................................................................................12

**Statutes**

15 U.S.C. 77z-1 (a)(3)(B)(iv) .....................................................................................................13

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...............................................................................................1, 2

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ 1, 10

**Other Authorities**

FINRA Rule 4210(f)(8)(B)(i) ................................................................................................ 3, 8

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL - 3:19-cv-03589-CRB; 4:19-cv-03601-HSG; 3:19-cv-03605-RS

Movant the Pivotal Investor Group[1] respectfully submits this reply memorandum of points and authorities in further support of its motion for consolidation of the Related Actions, appointment as Lead Plaintiff, and approval of its selection of Pomerantz as Lead Counsel (Dkt. No. 29).

## PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption can **only** be rebutted upon **proof** that the movant with the largest financial interest is atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Mere speculation or innuendo is insufficient to rebut this presumption. *See, e.g., Armour v. Network Assocs.*, 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001); *Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP (PJWx), 2012 U.S. Dist. LEXIS 28040, at *10 n.6 (N.D. Cal. Mar. 2, 2012).

The Pivotal Investor Group has indisputably alleged the greatest losses, and thus the largest financial interest in the litigation within the meaning of the PSLRA, by a significant margin. Further, the Pivotal Investor Group has made the requisite *prima facie* showing of adequacy and typicality under Rule 23 of the Federal Rules of Civil Procedure. Accordingly, the Pivotal Investor Group has more than satisfied the requirements entitling it to the strong presumption as the "most adequate plaintiff," and should be appointed as Lead Plaintiff. 15 U.S.C § 78u-4(a)(3)(B)(iii)(II).

Three of the four movants who initially filed competing motions have either withdrawn their motions or filed statements of non-opposition to the competing motions for appointment as Lead Plaintiff. *See* Dkt. Nos. 35-37. Only the Retirement Funds, with losses less than half the

---

[1] All capitalized terms herein are defined in the Pivotal Investor Group's moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 29, 38.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL - 3:19-cv-03589-CRB; 4:19-cv-03601-HSG; 3:19-cv-03605-RS

size as those of the Pivotal Investor Group, still oppose the Pivotal Investor Group's appointment.

Conceding that the Pivotal Investor Group has the greatest financial interest in the litigation, the Retirement Funds attempt to undermine its application with a litany of speculative arguments. Specifically, the Retirement Funds argue that: (i) the Pivotal Investor Group is not an appropriate group permitted by the PSLRA; (ii) the Pivotal Investor Group's members lack standing to pursue Securities Act claims because unregistered shares of Class A common stock entered the secondary market in the months after the IPO; (iii) Pivotal Investor Group member Steven Doherty is inadequate and atypical due to inconsistent transaction histories submitted with his shareholder Certifications, his trading history, and his past employment at Dell EMC; and (iv) Pivotal Investor Group member Tech Trader is inadequate and atypical due to an algorithm it employs in connection with its trading activity.

The Retirement Funds' arguments are the definition of speculation and wholly without merit, and fall well short of the "***proof***" required to rebut the presumption under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Armour*, 171 F. Supp. 2d at 1054; *Feyko*, 2012 U.S. Dist. LEXIS 28040, at *10 n.6.

***First***, the Pivotal Investor Group is a small, cohesive partnership of two investors that have demonstrated their understanding of the responsibilities of a Lead Plaintiff and their willingness to undertake those responsibilities collectively. Courts in this Judicial District routinely appoint such groups as Lead Plaintiffs, even absent a pre-litigation relationship. *See, e.g.*, *In re Versata, Inc.*, Nos. C 01-1439 SI *et al.*, 2001 U.S. Dist. LEXIS 24270, at *19-*22 (N.D. Cal. Aug. 17, 2001) (finding "[r]equiring a pre-litigation relationship . . . [to be] too rigid" and "find[ing] that under appropriate circumstances small groups, whether or not they have any pre-litigation relationship, can aggregate their financial losses.").

***Second***, the presence of unregistered shares in the secondary market at the time that the Pivotal Investor Group made certain of their purchases does not deprive the Pivotal Investor

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL - 3:19-cv-03589-CRB; 4:19-cv-03601-HSG; 3:19-cv-03605-RS

Group's members of standing to pursue Securities Act claims. At the time of the purchases at issue, unregistered shares of Class A common stock comprised less than 25 percent of the total market, and thus shares issued in connection with the IPO continued to dominate the market, making it sufficiently plausible that the Pivotal Investor Group's shares were traceable to the offering to confer standing for Securities Act claims. *Sudunagunta v. Nantkwest, Inc.*, No. CV-16-1947-MWF (JEMx), 2018 U.S. Dist. LEXIS 137084, at *15-*16 (C.D. Cal. Aug. 13, 2018) ("[D]istrict courts assessing traceability look to whether the market was ***dominated*** by shares from the offering in question.") (emphasis added).

***Third***, Doherty has made the requisite *prima facie* showing of typicality and adequacy. Contrary to the Retirement Funds' assertions, the conflicting transaction histories submitted with Doherty's two certifications in this litigation constitute minor errors, subsequently explained and cured. *See* Dkt. No. 38 at 9-11; Dkt. No. 38-3. Moreover, Doherty's trading patterns clearly demonstrate that he does not meet the definition of a day trader. *See* Financial Industry Regulatory Authority ("FINRA") Rule 4210(f)(8)(B)(i) (defining "day trading" as "the purchasing and selling or the selling and purchasing of the same security on the same day in a margin account"). Beginning on May 8, 2019—nearly four weeks before the end of the Class Period— he purchased a total of 12,975 Pivotal shares, all of which he continued to hold through the alleged corrective disclosure marking the end of the Class Period. Doherty did not have any contact with Pivotal employees or come into possession of any non-public information pertaining to Pivotal during his employment at Dell EMC, and there is nothing in the record to suggest otherwise.

***Fourth***, Tech Trader is far from the "experimental lead plaintiff" that the Requirement Funds seek to characterize it as, and has likewise made the requisite *prima facie* typicality and adequacy showings. Tech Trader merely employs an algorithm that emulates conventional investment decisionmaking, and incurred significant financial losses because the Defendants' alleged false and misleading statements concerning Pivotal's business and operations distorted

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL - 3:19-cv-03589-CRB; 4:19-cv-03601-HSG; 3:19-cv-03605-RS

the volume and price information upon which Tech Trader relied. Its Investment Manager, William Mok, monitors Tech Trader's investments and retains the ability to intervene in any of its trades, and Mok's conduct in this litigation to date has shown him to be actively involved in seeking recovery on Tech Trader's behalf.

Finally, the Pivotal Investor Group respectfully submits that the Retirement Funds have taken inconsistent and self-serving positions with respect to the recoverability under the Securities Act of losses incurred in connection with purchases of Pivotal common stock after certain unregistered shares of Pivotal common stock entered the market on November 6, 2018. While its initial motion brief alleged substantial losses incurred by St. Louis Police on purchases that occurred *exclusively* after November 6, 2018 (*see* Dkt. No. 21 at 8-9; Dkt. No. 22-2), just two weeks later, in its opposition brief, the Retirement Funds argued that investors who acquired Pivotal securities on or after that date lacked standing to pursue Securities Act claims and are therefore inadequate to serve as Lead Plaintiff (*see* Dkt. No. 39 at 5-7). The Retirement Funds' apparent willingness to abruptly change their position purely for tactical advantage and at the expense of other Class members—***indeed, at the expense of one of the Retirement Funds' own group members***—calls into question their fitness to fulfill the fiduciary obligations of lead plaintiffs.

For the foregoing reasons, and for those set forth in the Pivotal Investor Group's moving and opposition briefs (Dkt. Nos. 29, 38), the Pivotal Investor Group respectfully requests that the Court grant its motion for consolidation, appointment as Lead Plaintiff, and approval of selection of counsel, and deny the competing motion of the Retirement Funds.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL - 3:19-cv-03589-CRB; 4:19-cv-03601-HSG; 3:19-cv-03605-RS

Case 2:19-cv-05735-PA-ERB Document 54 Filed 09/15/21 Page 2 of 25
Case 3:19-cv-03589-CRB Document 44 Filed 09/15/21 Page 13 of 24

## ARGUMENT

**I. THE RETIREMENT FUNDS' SPECULATIVE ATTACKS ON THE FITNESS OF THE PIVOTAL INVESTOR GROUP ARE WITHOUT MERIT**

### A. The Pivotal Investor Group Is An Appropriate Group

The Retirement Funds' assertion that the Pivotal Investor Group is not a "group" within the meaning of the PSLRA is demonstrably incorrect. The PSLRA expressly permits groups to serve as lead plaintiffs, and courts in this Judicial District have frequently appointed groups of investors to serve as Co-Lead Plaintiffs in PSLRA actions, even in the absence of a pre-litigation relationship among the group's members. *In re Versata, Inc.,* Nos. C 01-1439 SI *et al.*, 2001 U.S. Dist. LEXIS 24270, at *22 (N.D. Cal. Aug. 17, 2001) ("under appropriate circumstances small groups, whether or not they have any pre-litigation relationship, can aggregate their financial losses."); *Robb v. Fitbit Inc.*, No. 16-cv-00151-SI, 2016 U.S. Dist. LEXIS 62457, at *14 (N.D. Cal. May 10, 2016) (appointing as lead plaintiff a group of investors without pre-litigation relationship); *Bruce v. Suntech Power Holdings Co., Ltd.*, No. CV 12-04061 RS, 2012 U.S. Dist. LEXIS 167702, at *9-10 (N.D. Cal. Nov. 13, 2012) (same). Here, the group has submitted a Joint Declaration attesting to its members' reasons for seeking appointment as a group, their common goals, the steps that they will take to supervise counsel, and their understanding of the obligations of a lead plaintiff appointed pursuant to the PSLRA. *See* Dkt. No. 38-2. This showing more than suffices to address the Retirement Systems' speculative concerns. *See*, *e.g.*, *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK, 2014 U.S. Dist. LEXIS 80141, at *21-*22 (N.D. Cal. June 10, 2014); *Suntech Power*, 2012 U.S. Dist. LEXIS 167702, at *9-10. Indeed, the Joint Declaration submitted by the Pivotal Investment Group is substantively similar to that submitted by the Retirements Systems, two wholly separate pension funds with absolutely no pre-litigation relationship. *See* Dkt. No. 22-4. It is hard to fathom how the Retirement Systems' proposed lead plaintiff grouping is any way superior to that of the Pivotal Investor Group.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL - 3:19-cv-03589-CRB; 4:19-cv-03601-HSG; 3:19-cv-03605-RS

### B. Both Members Of The Pivotal Investor Group Have Standing To Pursue Securities Act Claims

The Retirement Funds argue that neither Doherty nor Tech Trader has standing to pursue Securities Act claims in this litigation. Specifically, the Retirement Funds' argument concerns a quantum of unregistered shares of Pivotal Class A common stock issued prior to the IPO to GE International Holdings B.V. ("GE") in connection with the conversion of its Class B and Class C common stock. On November 6, 2018, after the expiration of a 180-day lock-up provision, GE sold 9,836,521 of its shares of Class A common stock. As of November 6, 2018, these unregistered shares of Pivotal Class A common stock comprised less than 25 percent of all such shares on the market. Accordingly, because the only shares that Doherty and Tech Trader held at the end of the Class Period were purchased after the entry into the market of the unregistered shares previously owned by GE, the Retirements Funds contend that "neither [Doherty nor Tech Trader] can show that their shares are traceable to the Registration Statement." Dkt. No. 39 at 13.

The Retirement Funds are incorrect. The entry into the secondary market of unregistered shares does not defeat traceability. "[D]istrict courts assessing traceability look to whether the market was *dominated* by shares from the offering in question." *Nantkwest*, 2018 U.S. Dist. LEXIS 137084, at \*15-\*16 (emphasis added). Here, as the Retirement Systems acknowledge, the unregistered shares of Class A common stock constituted less than 25 percent of Class A common stock in circulation as of November 6, 2018. *See* Dkt. No. 39 at 6. Accordingly, *more than three quarters* of the shares in circulation on that date were issued in connection with the IPO. Those shares, not unregistered shares, thus dominated the market for Pivotal common stock, making it highly likely, or at least more than plausible, that the Pivotal Investor Group's shares were issued in the IPO. *See Nantkwest*, 2018 U.S. Dist. LEXIS 137084, at \*17-\*18 (where IPO shares dominated market, "the Court concludes that Lead Plaintiffs have shown *more* than that their shares 'might' have been issued in the IPO" and finding "far more than a 'speculative basis' for statutory standing") (emphasis in original). *Cf. Welgus v. Trinet Grp., Inc.*, No. 15-cv-03625-BLF, 2017 U.S. Dist. LEXIS 6347, at \*48 (Jan.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL - 3:19-cv-03589-CRB; 4:19-cv-03601-HSG; 3:19-cv-03605-RS

17, 2017) (traceability to offering not plausible where only 45 percent of shares on market were from offering); *Abbey v. Computer Memories, Inc.*, 634 F. Supp. 870, 874 (N.D. Cal. 1986) (traceability to offering not plausible where only 18 percent of shares on market were from offering). The Retirement Systems' categorical assertion that the Pivotal shares acquired by the Pivotal Investor Group after November 6, 2018 were not traceable to the IPO is thus highly speculative, and—again—it is well settled that arguments "based on pure speculation" are "insufficient to rebut the lead plaintiff presumption" in actions governed by the PSLRA. *Armour v*, 171 F. Supp. 2d at 1054.

In addition, the Retirement Systems' argument, if it were correct (and again, it is not), would significantly undermine their own Lead Plaintiff motion and reduce their recoverable damages in this litigation. If any Class member who purchased Pivotal stock on or after November 6, 2019 would lack standing to pursue Securities Act claims, then one of the Retirement Systems, St. Louis Police, would itself lack standing to pursue Securities Act claims, and would thus be disqualified from appointment as Lead Plaintiff. This would reduce the Retirement Systems' recoverable damages by roughly $65,561. The fact that the Retirements Systems submitted loss calculations including St. Louis Police's losses and asserting that St. Louis had Securities Act claims similar to the rest of the Class (*see* Dkt. No. 21 at 3) demonstrates that this specious argument was invented in the Retirement Funds' opposition brief as a last-ditch gambit to secure control of this litigation. The Retirement Systems' advocacy of a position antithetical to the interests of one of its members and a broad swath of the Class that purchased Pivotal shares on or after November 6, 2018 strongly suggests that this argument represents a less-than-ingenuous attempt to secure an advantage over the Pivotal Investor Group—and as discussed in greater detail *infra* at Section II, the Retirement Systems' willingness to make such an argument raises significant questions about their own adequacy to serve as Lead Plaintiffs.

C.    **Doherty Is A Typical And Adequate Class Representative**

The Retirement Systems have argued that Doherty is atypical and/or inadequate for three

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL - 3:19-cv-03589-CRB; 4:19-cv-03601-HSG; 3:19-cv-03605-RS

purported reasons. First, the transaction history appended to Doherty's Complaint Certification (Dkt. No. 1-1) is inconsistent with that appended to Doherty's Motion Certification (Dkt. No. 30-3 at *6-*14). However, in its opposition brief, the Pivotal Investor Group has explained the inconsistencies in the transaction histories appended to Doherty's two Certifications, and to allay any remaining doubts has submitted an amended Certification confirming the accuracy of the schedule of transactions appended to his Motion Certification. *See* Dkt. No. 38 at 9-11; Dkt. No. 38-3. Contrary to the Retirement Systems' assertions, this constitutes precisely the type of inadvertent mistake—here, promptly cured—that courts have found to have no bearing on a movant's adequacy to serve as a Lead Plaintiff. *See City of Marysville Gen. Emples. Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*, No. CV 09-659-EJL-CWD, 2010 U.S. Dist. LEXIS 41991, at *18 (D. Idaho Apr. 29, 2010) ("Inadvertent mistakes made in the sworn certification that do not strike at the heart of the proposed plaintiff's ability to be truthful in representing the class generally do not serve as a basis for disqualification."); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 411 (D. Minn. 1998) (permitting submission of supplemental certification to correct technical defects in original certification).

Second, the Retirement System has argued that Doherty's trading record disqualifies him from appointment as a Lead Plaintiff, characterizing it as "akin to that of a day trader," and "injects serious doubt as to whether Doherty could invoke the fraud on the market presumption of reliance." Dkt. No. 39 at 9. First, Doherty is ***not*** a day trader. FINRA Rule 4210(f)(8)(B)(i) defines "day trading" as "the purchasing and selling or the selling and purchasing of the same security on the same day in a margin account." Here, in a series of transactions starting on May 8, 2019, almost four weeks before the end of the Class Period, Doherty purchased 12,975 shares of Pivotal stock in total, and continued to hold all 12,975 shares on June 4, 2019, the date of the corrective disclosure marking the end of the Class Period. This trading activity does not constitute day trading.

Moreover, even assuming *arguendo* that Doherty were a day trader, courts in this Judicial District and elsewhere have routinely appointed purported day traders as lead plaintiffs.

8

*See*, *e.g.*, *In re Zynga, Inc. Sec. Litig.*, No. C 12-04007 JSW, 2013 U.S. Dist. LEXIS 9314, at *6 (N.D. Cal. Jan. 22, 2013) ("the Court finds that whether [movant] is a day trader is inconsequential to his request to be appointed lead plaintiff."); *Serafimov v. Netopia, Inc.*, No. C-04-03364 RMW, 2004 U.S. Dist. LEXIS 25184, at *17-*18 (N.D. Cal. Dec. 3, 2004) ("[T]he Ninth Circuit has held that day traders suffer as do other traders under fraud on the market theory.") (citing *Wool v. Tandem Computers*, 818 F.2d 1433, 1437 (9th Cir. 1987)); *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 410 (D. Del. 2014) ("[T]he Court agrees that the fact that an investor may trade at higher volume or more frequently and could be characterized as a 'day trader' is not enough to rebut the presumption. The opposing movant must provide some additional evidence that a presumptive lead plaintiff did not rely on market price of the shares."). The Retirement Systems may not disqualify Doherty from appointment as Lead Plaintiff by simply and falsely labeling him a day trader.

Third, Doherty's employment at Dell EMC does not subject him to any disqualifying unique defenses. The Retirement Funds contend that because Pivotal was a strategic partner of Dell EMC, Doherty was employed at Dell EMC, and Doherty's responsibilities at Dell EMC involved working with third-party partners, Doherty was therefore likely to have been "exposed to material non-public information concerning Pivotal." Dkt. No. 39 at 11. This series of logical leaps is the very definition of speculation, and there are no facts in the record that would render it sufficiently plausible to disqualify Doherty from appointment. Nor could any facts be adduced to show otherwise, because, contrary to the Retirement Funds' speculative assertions, Doherty in fact never dealt with Pivotal employees while working at Dell EMC, nor did he have access to any non-public information concerning Pivotal.

### D.     Tech Trader Is A Typical And Adequate Class Representative

By cherry-picking certain statements from Tech Trader's website and presenting them out of context, the Retirement Funds attempt to characterize Tech Trader as a highly unusual fund trading in a way fundamentally different than most Class members, and thus an "experimental lead plaintiff" that does not satisfy the adequacy or typicality requirements of

9

Rule 23. Dkt. No. 39 at 13. Yet the Retirement Funds conveniently omitted from its opposition brief multiple statements from Tech Trader's website emphasizing its conventional investment strategy. Indeed, as its website clarifies, Tech Trader "is not quant. It is not stat-arb. It is not high frequency. . . . ***A person doesn't think through stats, correlations, or complex math models when trading, and neither does Tech Trader***."[2]

The Retirement Funds' characterization of Tech Trader as inadequate is unavailing. Taking out of context an ambiguous statement on Tech Trader's website to the effect that Mok, the fund's Investment Manager, has "moved on to other interests," the Retirement Systems speculate that Mok has abandoned Tech Trader and that "it is unclear who, or what, is attempting to represent the Class." Dkt. No. 39 at 12. Yet this speculation is belied by the record, which includes (i) a shareholder Certification, executed by William Mok, as Investment Manager of Tech Trader, with authority to bind Tech Trader and enter into litigation on Tech Trader's behalf, attesting to his understanding of the litigation and his willingness to move for Tech Trader's appointment as a Lead Plaintiff (Dkt. No. 30-3 at *2-*3); and (ii) a Joint Declaration executed by Mok, on behalf of Tech Trader, along with Doherty, further attesting to the steps that Mok intends to take on behalf of Tech Trader if the Pivotal Investor Group is appointed as Lead Plaintiff (Dkt. No. 38-2). As Investment Manager, Mok is clearly sufficiently involved in the management of Tech Trader to be aware of the fund's losses in connection with the fraud alleged in this litigation and to be willing to proactively contact counsel in connection with pursuing recovery on behalf of Tech Trader and the other Class members. This more than satisfies the requisite *prima facie* showing of Tech Trader's adequacy. *See*, *e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (adequacy inquiry assesses whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and will "prosecute the action vigorously on behalf of the class.") (citations omitted).

---

[2] *Tech Trader*, TECH TRADER, https://www.techtrader.ai/#aboutbox (last visited Sept. 10, 2019) (emphasis added).

The Retirement Funds' characterization of Tech Trader as atypical is likewise unavailing. Tech Trader employs an algorithm that takes into account price and volume information in making investments, but Tech Trader's Investment Manager, William Mok, regularly monitors Tech Trader's investments and retains the ability to intervene in any investment "decision" arrived at by this algorithm. Tech Trader is thus not meaningfully different from any other sophisticated fund adhering to fundamental investment guidelines, yet ultimately accountable to an investment manager's decisionmaking. The false and misleading statements that Defendants are alleged to have made regarding Pivotal's business and operations distorted the price and volume information upon which Tech Trader relied in making its investments, thus causing Tech Trader to incur significant financial losses as the truth about the Company emerged. Courts throughout the country and in this Judicial District have appointed as lead plaintiffs investors who traded securities "based on technical stock information . . . rather than [a company's] reported earnings or 'fundamentals'". *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 U.S. Dist. LEXIS 177787, at *13-14 (N.D. Cal. Dec. 22, 2016). *See also In re Cephalon Sec. Litig.*, No. 96-0633, 1998 U.S. Dist. LEXIS 12321, at *3-*4 (E.D. Pa. Aug. 11, 1998) (certifying class and class representative who "was a technical trader who purchased Cephalon common stock . . . on the basis of Cephalon's large trading volume and the range of movement in the stock price."); *OFI Risk Arbitrages*, 63 F. Supp. 3d at 410 ("The opposing movant must provide some additional evidence that a presumptive lead plaintiff did not rely on the market price of the shares."). In investing in Pivotal securities, Tech Trader, like all Class members, "relied on the integrity of market prices to make [its] trading decisions." *Hayes*, 2016 U.S. Dist. LEXIS 177787, at *13-*14 (N.D. Cal. Dec. 22, 2016). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406, at *16 (N.D. Cal. Apr. 16,

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL - 3:19-cv-03589-CRB; 4:19-cv-03601-HSG; 3:19-cv-03605-RS

2007) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Tech Trader has thus clearly made the requisite *prima facie* typicality showing.

The Retirement Funds additionally allege that Tech Trader "has not been forthcoming in its PSLRA certification[]" because Tech Trader reported a single purchase of 51,114 shares of Pivotal stock at $18.7946 per share on June 4, 2019, a day on which the Retirement Funds contend that no single purchase of Pivotal stock exceeded 50,000 shares, and on this basis asserts that Tech Trader must have "provided the court with the average purchase price of its total shares acquired on June 4, 2019 over the course of several transactions." Dkt. No. 39 at 13. Yet Tech Trader's Interactive Brokers account statements clearly reflect a single purchase, at 9:53:32 a.m. on June 4, 2019, of 51,114 shares of Pivotal common stock at $18.7946 per share. *See* Reply Declaration of Jennifer Pafiti in Further Support of Motion, Ex. A. Tech Trader's account statements speak for themselves and demonstrate that Tech Trader has been wholly forthcoming with respect to its transactions in Pivotal securities, and that the Retirement Systems have once again missed the mark with their unsubstantiated speculation.

The Retirement Systems finally argue that Tech Trader is inadequate because the timing of its purchases "giv[e] it standing for approximately 0.25 percent of the Class Period." Dkt. No. 39 at 13. Yet the Retirement Systems has cited no case law or identified factual issues specific to this case in support of the curious proposition that purchasing on the last day of the Class Period has any bearing on Tech Trader's standing to pursue claims on behalf of all Class members. Again, both movants are purporting to represent all investors that purchased Pivotal securities during the alleged Class Period. It is only in their opposition brief that the Retirement Systems reversed course and attempted to discount the claims of investors that purchased Pivotal shares either after November 6, 2018 or near the end of the Class Period. The Court should not award such transparent gamesmanship. For the purposes of appointing a lead plaintiff pursuant to the PSLRA, the Court's inquiry must take into account the entirety of the Class Period and consider all putative Class members as similarly situated. *See*, *e.g.*, *Woburn*

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL - 3:19-cv-03589-CRB; 4:19-cv-03601-HSG; 3:19-cv-03605-RS

*Ret. Sys. v. Omnivision Techs., Inc.*, Nos. 5:11-CV-05235-RMW *et al.*, 2012 U.S. Dist. LEXIS 21590, at \*15 (N.D. Cal. Feb. 21, 2012) ("tak[ing] the *whole* class period" into account in determining the most adequate plaintiff) (emphasis added); *Borenstein v. Finova Group*, Nos. CIV 00-619-PHX-SMM *et al.*, 2000 U.S. Dist. LEXIS 14732, at \*26-\*27 (D. Ariz. Aug. 30, 2000) (denying motion by movants who "openly questioned whether [certain class members] will be able to recover anything," finding their appointment "would pose a significant risk that the complete interests of all class members would not be fairly and adequately protected.").

### E.   Discovery Into The Retirement Funds' Speculative Allegations Is Unwarranted

Finally, the Retirement Funds seek discovery into all of the foregoing issues that purportedly call into question the Pivotal Investor Group's fitness to represent the Class. Dkt. No. 39 at 13-14. However, the PSLRA permits discovery in connection with lead plaintiff appointment only "in limited circumstances, requiring 'the plaintiff first demonstrate[] a reasonable basis for finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.'" *Ferrari v. Impath, Inc.*, 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at \*23-\*24 (S.D.N.Y. July 15, 2004) (quoting 15 U.S.C. 77z-1 (a)(3)(B)(iv)). *See also Khunt v. Alibaba Group Holding Ltd.*, 102 F. Supp. 3d 523, 539 (S.D.N.Y. 2015) ("see[ing] no reason to grant that discovery" where movants "made the requisite preliminary showings of adequacy to be co-lead plaintiffs" and "see[ing] little to be found out in such discovery" because movants had already addressed the questions forming the purported basis for discovery). Here, as discussed above, the Retirement Funds' objections to the Pivotal Investor Group's appointment as Lead Plaintiff are highly speculative. Moreover, each of these objections has been addressed herein and in the Pivotal Investor Group's opposition brief (*see* Dkt. No. 38). There is thus no "reasonable basis for finding that the presumptively most adequate plaintiff[s]"—here, the Pivotal Investor Group—is "incapable of adequately representing the class." 15 U.S.C. 77z-1(a)(3)(B)(iv). The Retirement Funds' discovery request is thus barred by the clear terms of the PSLRA and would constitute an

13

impermissible waste of the Court's and the parties' time and resources, delaying the prosecution of this action to the prejudice of the putative class.

## II.  THE RETIREMENT FUNDS' INCONSISTENT POSITIONS IN THIS LITIGATION RAISE QUESTIONS AS TO THEIR ADEQUACY TO SERVE AS CLASS REPRESENTATIVES

Finally, the Pivotal Investor Group respectfully submits that the Retirement Funds' conduct in this litigation raises serious questions as to their willingness to subordinate their own interests to those of the putative Class in this litigation, and thus their adequacy to serve as Lead Plaintiffs in this action.  Specifically, after filing a motion brief alleging significant losses incurred by one of the funds, St. Louis Police, that acquired Pivotal securities exclusively *after* the unregistered securities previously held by GE entered the market on November 6, 2018 (*see* Dkt. No. 21 at 8-9; Dkt. No. 22-2), the Retirement Funds abruptly changed positions and asserted, for the first time in their opposition brief, that investors who acquired Pivotal securities after that date lacked standing to pursue Securities Act Claims (*see* Dkt. No. 39 at 9-11).  As noted above and in greater detail below, adopting the Retirement Funds' position would, at the outset of this litigation, exclude a significant number of Class members—including even St. Louis Police, one of the Retirement Systems—from this litigation, and reducing the Retirement Systems' own recoverable losses by roughly $65,561.  "[I]t is unclear why a plaintiff would argue for . . . reducing the class size and limiting the potential amount of damages, *unless it was in the best interest of that particular plaintiff only*."  *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *6 (N.D. Cal. Aug. 22, 2008) (emphasis added).  The Retirement Systems then continued this gambit by arguing that investors that purchased securities on the last day of the Class Period somehow had weaker or less adequate claims.  But the Retirement Systems made no mention of such purported infirmities or of their willingness to throw segments of the Class under the bus when they filed their initial motion seeking appointment as Lead Plaintiffs on behalf of the *entire* Class.  If appointed as Lead Plaintiffs in this litigation, the Retirement Systems will owe a fiduciary

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL - 3:19-cv-03589-CRB; 4:19-cv-03601-HSG; 3:19-cv-03605-RS

obligation to the Class to place their interests ahead of those of the Retirement Systems, yet their conduct in this litigation thus far raises questions as to their willingness to do so.

### CONCLUSION

For the foregoing reasons, and for the reasons set forth in its moving brief (Dkt. No. 29), the Pivotal Investor Group respectfully requests that the Court issue an Order (i) consolidating the Related Actions, appointing the Pivotal Investor Group as Lead Plaintiff for the Class, and approving Pomerantz as Lead Counsel for the Class; and (ii) denying the competing motion of the Retirement Funds.

Dated:  September 10, 2019       Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*admitted pro hac vice*)
J. Alexander Hood II
(*admitted pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
(*pro hac vice application forthcoming*)
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL - 3:19-cv-03589-CRB; 4:19-cv-03601-HSG; 3:19-cv-03605-RS

*Counsel for Lead Plaintiff Movants*
*and Proposed Lead Counsel for the Class*

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL - 3:19-cv-03589-CRB; 4:19-cv-03601-HSG; 3:19-cv-03605-RS

## <u>PROOF OF SERVICE</u>

I hereby certify that on September 10, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti

17

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF THE TECH TRADER FUND LP AND STEVEN DOHERTY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL - 3:19-cv-03589-CRB; 4:19-cv-03601-HSG; 3:19-cv-03605-RS