# Exhibit B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

|  |  |
|---|---|
| ANASTACIA SHAFFER, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>               v.<br><br>DIGITAL GENERATION, INC., NEIL NGUYEN, SCOTT K. GINSBURG, and OMAR CHOUCAIR,<br><br>                              Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

**No. 13 Civ. 01684-DCG**

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE**
**MOTION BY ALI ALAVI FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL**
**OF COUNSEL, AND IN OPPOSITION TO THE COMPETING LEAD PLAINTIFF**
**MOTION**

Ali Alavi (referred to herein as "Alavi") respectfully submits this memorandum in further support of his motion for appointment as Lead Plaintiff, approval of their selection of lead counsel and in opposition to the competing motion, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## PRELIMINARY STATEMENT

Currently pending before the Court are two motions seeking appointment as Lead Plaintiff. Of the two movants, Alavi *clearly* has the largest financial interest in these actions. The critical factor which the Court must determine to appoint the lead plaintiff is which movant has "the largest financial interest in the relief sought by the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) ("In appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status."); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 439 (S.D.TX. 2002) ("the presumption [of the adequacy of the plaintiff with the largest financial interest in the outcome of the litigation] described in [15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) ] may be rebutted only upon proof by a member of the purported plaintiff class that the proposed individual or entity will not fairly and adequately protect the interests of the class or that he/she/or it is subject to unique defenses that render [him/her/or it] incapable of adequately representing the class.").

Here, Alavi easily has the largest financial interest in this litigation. As the following table illustrates, Alavi's purported losses *are almost ten times greater* than the purported losses of the other competing movant, Robert Lowinger ("Lowinger"). Significantly, Alavi has retained over ten times as many shares at the end of the Class Period than Lowinger.

1

| Movant(s) | Shares Purchased | Amount Expended | Retained Shares at end of Class Period | Loss |
|---|---|---|---|---|
| **Alavi** | **1,371,548** | **$14,328,830** | **232,602** | **$575,246** |
| **Lowinger** | **20,000** | **$200,000** | **20,000** | **$60,438** |

Accordingly, because he has the largest financial interest in the litigation and otherwise

meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, the presumptively

most adequate plaintiff supporting appointment as Lead Plaintiff in the instant litigation is Alavi.

## ARGUMENT

**A.    Alavi Has the Largest Financial Interest**

Courts have considered four factors in the determination of the "largest financial interest"

for purposes of the lead plaintiff motion: "(i) the number of shares purchased during the class

period; (ii) the number of net shares purchased during the class period; (iii) the total net funds

expended during the class period; and (iv) the approximate losses suffered during the class

period." *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) ("*Lax-Olsten*").

Here, Alavi, without question, has the largest financial interest in the action of any

competing movant under the *Lax-Olsten* factors. Alavi purchased a total of 1,371,548 shares

during the Class Period, at a cost of $14,328,830. Alavi still held 232,602 of his shares after the

end of the Class Period, and has total losses of approximately $575,246. As illustrated in the

table above, Alavi suffered the largest losses during the Class Period and retained the most

shares of any Class Member who filed a Lead Plaintiff Motion.  *See In re Olsten Corp. Sec.

Litig.,* 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998); *Lax v. First Merch. Acceptance Corp.,* No. 97 C

2715, 1997 U.S. Dist. LEXIS 11866, at *17-*18 (N.D. Ill. Aug. 6, 1997).   As such, the chart

2

above demonstrates that under the *Lax-Olsten* factors, Alavi has the largest financial interest in this action.

Of the four *Lax-Olsten* factors outlined above, most courts agree that the financial loss suffered is the most important factor. *See Goldstein v. Puda Coal, Inc.*, 827 F. Supp.2d 348, 354 (S.D.N.Y. 2011) (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008)) ("Financial loss, the last factor, is the most important element of the test."); *In re Universal Access, Inc. Sec. Litig.,* 209 F.R.D. 379 (E.D. Tex. 2002) (group of investors who suffered the greatest financial loss from alleged securities fraud would be appointed lead plaintiff pursuant to the Private Securities Litigation Reform Act (PSLRA)). On this factor, Alavi's net losses ***exceed*** the losses of the other competing movant by more than $500,000.

Significantly, Alavi also has the most retained shares – an important secondary measure of financial interest in light of the Supreme Court's ruling in *Dura Pharmaceuticals, Inc., et al. v. Broudo et al.* ("*Dura*"). 544 U.S. 336 (2005). The Court in *Dura* held that loss causation could only be alleged for shares held at the time of a corrective disclosure. Accordingly, courts have recognized the number of retained shares as the determinative factor in evaluating competing movants' financial interest in the litigation. *See Quan v. Advanced Battery Tech., Inc.*, No. 11 Civ. 2279 (CM), 2011 U.S. Dist. LEXIS 102723, at *6-7 (S.D.N.Y. Sept. 9, 2011); *Schueneman v. Arena Pharma., Inc.*, No. 10 cv 1959 BTM (BLM), 2011 U.S. Dist. LEXIS 87373, at *14 (C.D. Cal. Aug. 8, 2011) ("The Court adopts the retained share methodology, which looks to the number of retained shares at the end of the period."); *Applestein v. Medivation Inc.*, No. C 10-0098 MHP, 2010 U.S. Dist. LEXIS 98255, at *6 (N.D. Cal. Sept. 20, 2010) ("When calculating the greatest financial interest, the court utilizes the retained share methodology, which primarily

3

looks to shares brought during the class period that are retained at the end of the class period.");
*In re Comverse Tech. Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. Mar. 2, 2007) (appointing a group lead plaintiff because it "had the greatest number of relevant net shares purchased, net funds expended, and suffered the greatest loss").  Here, Alavi retained 232,602 shares, more than ten times the amount of Lowinger's retained shares. Accordingly, Alavi has the largest financial interest in the litigation and should be appointed Lead Plaintiff.

> **1.    Alavi Otherwise Satisfies the
> Requirements of Rule 23**

Under Rule 23(a)(3), typicality exists when the proposed lead plaintiff's claims and injuries arise from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. *See Lehocky v. Tidel Technologies, Inc.,* 220 F.R.D. 491, 500 (S.D. Tex. 2004)( "Rather, typicality may be satisfied where the representative plaintiffs' claims arise out of the same event or course of conduct as the other members' claims and are based on the same legal theory") Alavi's claims "are not antagonistic [to] or in conflict with those of the class . . . ." *See id*. at *4.  Indeed, Alavi's interests are the same as those of other Class members, because Alavi's claims are based on the same legal theories and arise from the same events and course of conduct giving rise to the claims of other Class members, thus satisfying the typicality requirement of Rule 23(a)(3).

Alavi also satisfies the adequacy requirement of Rule 23(a)(4).  Here, Alavi's interests are squarely aligned with those of the Class and his proposed Lead Counsel is qualified to litigate the Class' claims. Accordingly, the adequacy requirement of Rule 23(a)(4) is satisfied. As such, there should be little dispute regarding their motion for appointment as Lead Plaintiff in this action.

Lacking any credible argument that he has the largest financial interest in the action, Lowinger might attempt to argue that Alavi's trading patterns, which include multiple purchases and sales of Digitial Generation stock on a given trading day, renders his claims atypical of other class members. This argument falls flat for several reasons. First, multiple trades on a particular day would not evidence that Alavi is a daytrader. It is not always possible to trade entire blocks of shares either on a purchase or sale, and thus shares must be broken into smaller amounts or otherwise layered over several days. Moreover, assuming *arguendo* that Alavi was a daytrader, however, it would not be fatal to his appointment as Lead Plaintiff, as Courts throughout the country recognize that where false and misleading information has been spread into the market by defendants, all types of traders, including daytraders, are impacted and therefore are adequate and typical to bring claims on behalf of all class members. *Levie v. Sears Roebuck & Co.*, 496 F. Supp. 2d 944, 949 (N.D. Ill. 2007) (rejecting defendants' arguments that day traders cannot serve as a Class Representative, "[T]here is a fundamental difference between an investor's presumption that the market price will move and the fact that the price was tainted by fraud. Thus, the court disagrees with defendants' position that short sellers, day traders and option traders must be excluded from the class because they cannot rely on the fraud-on-the-market theory. As noted above, any such trader who can establish injury as a result of the alleged fraud is properly included in the class definition."); *Andrada v. Atherogenics, Inc.*, No. 5-CV-0061-RJH (S.D.N.Y. April 18, 2005), S*ee Taubenfeld v. Career Education Corp.*, 2004 U.S. Dist. LEXIS 4363, at *13 (N.D. Ill. March 22, 2004).

Furthermore, courts have rejected the proposition that daytraders "may not be able to rely on the 'fraud on the market' theory of reliance." *Id.*, citing *In re Royal Ahold N.V. Sec. and ERISA Litig.*, 219 F.R.D. 343, 354 (D. Md. 2003) ("where false information and misleading

omissions pollute the market, all types of investors are injured."; *In re Sunbeam Sec. Litig.*, 2001 U.S. Dist. LEXIS 25703, at *1 (S.D. Fla. July 3, 2001) (noting there is no "persuasive precedent or case law establishing that day traders . . . absent specific refutation of the rebuttable presumption of reliance, are not entitled to the presumption of reliance where they bought in an efficient secondary market.").

As illustrated above, courts in this District and around the country hold that where false information has been leaked into the market, all investors, even daytraders, are impacted by the defendants' fraudulent actions; and, therefore all investors, even purported daytraders, have standing to prosecute a class action claim to recover damages on behalf of their fellow shareholders.

**B.      Lead Plaintiffs' Selection of Lead Counsel Should Be Approved**

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 441 (S.D. Tex. 2002)(Courts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class.); *In re Luxottica Group, S.p.A. Sec. Litig.*, No. 01-CV-03285, 2004 U.S. Dist. LEXIS 21130, at *6-7 (E.D.N.Y. Oct. 22, 2004). Here, Alavi has selected Pomerantz Grossman Hufford Dahlstrom & Gross LLP ("Pomerantz") and the Rosen Law Firm ("Rosen") to serve as Lead Counsel and Abraham, Watkins, Nichols, Sorrels, Agosto & Friend ("Abraham") as Local Counsel for the Class. As evidenced by the firm résumés previously filed with the Court, counsel has extensive expertise and experience in the field of securities litigation, has successfully prosecuted numerous securities fraud class actions, and has obtained excellent recoveries on behalf of defrauded investors.

Accordingly, Alavi's selection of lead counsel should be approved.

6

**CONCLUSION**

For the foregoing reasons, Alavi respectfully requests the Court to issue an Order: (1) appointing Alavi as Lead Plaintiff for the Class; (2) approving the Pomerantz and Rosen as Lead Counsel and Abraham as Local Counsel for the Class; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: July 22, 2013
        New York, New York

<div style="margin-left:40%">

**ABRAHAM, WATKINS, NICHOLS,
SORRELS, AGOSTO & FRIEND**

By: */s/* Sammy Ford IV
Sammy Ford IV
Federal Bar Number: 950682
Texas Bar Number: 24061331
800 Commerce Street
Houston, TX 77002
Telephone: 713-222-7211
Facsimile: 713-225-0827

**THE ROSEN LAW FIRM**
Laurence Rosen
Phillip Kim
275 Madison Avenue, 34th Floor
New York, NY 10016
Phone (212) 686-1060
Fax (212) 202-3827

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Marc I. Gross
Jeremy A. Lieberman
Lesley F. Portnoy
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665

</div>

7

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile:  312-377-1184

*Counsel for Movant and Proposed Lead
Counsel for the Class*

8