# Exhibit D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-00292-WJM-KMT

ANGELO ALBANO, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

MOLYCORP, INC.,
MARK A. SMITH and
JAMES S. ALLEN,

      Defendants.

---

**THE MOLYCORP SHAREHOLDER GROUP'S REPLY MEMORANDUM IN
FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**

---

707306_1

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ....................................................................................1

II.    ARGUMENT.................................................................................................................3

    A.    The Molycorp Shareholder Group Is the Most Adequate Plaintiff..........................3

        1.    The Molycorp Shareholder Group Has Established Its Cohesion ...............3

    B.    Marner Asserts the Largest Individual Loss of Any Movant .................................7

        1.    Marner May Be Considered Individually ....................................................8

        2.    Speculative Arguments Against Marner Are Baseless ................................9

            a.    Alexander Cannot Claim the Largest Loss Under Any
                 Analysis...........................................................................................9

            b.    Marner's Trading Does Not Subject Him to Unique
                 Defenses.........................................................................................10

III.    CONCLUSION...........................................................................................................10

707306_1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Barnet v. Elan Corp., PLC.*,
 236 F.R.D. 158 (S.D.N.Y. 2005) ........................................................................................8

*Brown v. China Integrated Energy, Inc.*,
 No. CV 11-02559 MMM (PLAx), 2011 U.S. Dist. LEXIS 151131
 (C.D. Cal. Aug. 29, 2011) ...................................................................................................9

*Buettgen v. Harless*,
 263 F.R.D. 378 (N.D. Tex. 2009) .......................................................................................8

*Centurions v. Ferruzzi Trading Intern., S.A.*,
 No. 89 C 7009, 1994 WL 114860
 (N.D. Ill. Jan. 7, 1993) .....................................................................................................10

*Faris v. Longtop Fin. Techs. Ltd.*,
 No. 11 Civ. 3658 SAS, 2011 WL 4444176
 (S.D.N.Y. Oct. 4, 2011) .....................................................................................................6

*Friedman v. Quest Energy Partners LP*,
 261 F.R.D. 607 (W.D. Okla. 2009)......................................................................................4

*Goldstein v. Puda Coal, Inc.*,
 No. 11 Civ. 02598, 2011 WL 6075861
 (S.D.N.Y. Dec. 6, 2011)..................................................................................................1, 9

*Hodges v. Akeena Solar, Inc.*,
 263 F.R.D. 528 (N.D. Cal. 2009).....................................................................................1, 7

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
 No. 04-0265, 2004 WL 1221353 (E.D. Pa. June 3, 2004)...................................................8

*In re Cavanaugh*,
 306 F.3d 726 (9th Cir. 2002) ......................................................................................1, 5, 6

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001)............................................................................................4, 10

707306_1

**Page**

*In re Crocs, Inc. Sec. Litig.*,
   No. 07-cv-02351-REB-KLM, 2008 WL 4298316
   (D. Colo. Sept. 17, 2008) ......................................................................................................1

*In re Gentiva Sec. Litig.*,
   No. 10-cv-5064 (ADS)(WDW), 2012 U.S. Dist. LEXIS 9177
   (E.D.N.Y. Jan. 26, 2012) .......................................................................................................9

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
   No. 09-cv-00200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706
   (D. Colo. May 4, 2009) ................................................................................................. *passim*

*In re Nature's Sunshine Prods.*,
   No. 2:06-CV-267 TS, 2006 WL 2380965
   (D. Utah Aug. 16, 2006) ........................................................................................................4

*In re Neopharm, Inc. Sec. Litig.*,
   No. 02 C 2976, 2004 WL 742084 (N.D. Ill. Apr. 7, 2004).......................................................7

*In re Oppenheimer Rochester Funds Group Sec. Litig.*,
   No. 09-md-02063-JLK-KMT, 2009 U.S. Dist. LEXIS 113555
   (D. Colo. Nov. 18, 2009) ....................................................................................................4, 5

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) .............................................................................................7

*In re Ribozyme Pharm. Sec. Litig.*,
   192 F.R.D. 656 (D. Colo. 2000) ............................................................................................4

*In re SemGroup Energy Partners, L.P., Sec. Litig.*,
   No. 08-CV-425-GKF-PJC, 2008 WL 4826318
   (N.D. Okla. Oct 27, 2008)......................................................................................................3

*In re Spectranetics Corp. Sec. Litig.*,
   No. 08-cv-02048-REB-KLM, 2009 WL 1663953
   (D. Colo. June 15, 2009)...........................................................................................2, 3, 4, 5

*In re Surebeam Corp. Sec. Litig.*,
   No. 03 CV 1721JM(POR), 2004 WL 5159061
   (S.D. Cal. Jan. 5, 2004)......................................................................................................4, 8

707306_1

**Page**

*In re Wachovia Preferred Sec. and Bond/Notes Litig.*,
No. 09-cv-06351-RJS (S.D.N.Y.) .................................................................................6

*Mishkin v. Zynex, Inc.*,
No. 09-cv-00780-REB-KLM, 2010 WL 749864
(D. Colo. Mar. 3, 2010).................................................................................................4

*Montoya v. Mamma.com Inc.*,
No. 05 Civ. 2313(HB), 2005 WL 1278097
(S.D.N.Y. May 31, 2005)...............................................................................................9

*Prefontaine v. Research in Motion Ltd.*,
No. 11 Civ. 4068(RJS), 2012 WL 104770
(S.D.N.Y. Jan. 5, 2012)...............................................................................................10

*Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
No. 11-cv-00289-wks, slip op. (D. Vt. Apr. 27, 2012)..................................................5

*Richman v. Goldman Sachs Group, Inc.*,
274 F.R.D. 473 (S.D.N.Y. 2011) ..................................................................................6

*Sabbagh v. Cell Therapeutics, Inc.*,
No. C10-414MJP, 2010 WL 3064427
(W.D. Wash. Aug. 2, 2010) .............................................................................2, 4, 5, 7

*Schonfield v. Dendreon Corp.*,
No. C07-800MJP, 2007 WL 2916533
(W.D. Wash. Oct. 4, 2007) .......................................................................................5, 8

*Tsirekidze v. Syntax-Brillian Corp.*,
No. CV-07-2204-PHX-FJM, 2008 WL 942273
(D. Ariz. Apr. 7, 2008)..................................................................................................8

*Weston v. Ciber, Inc.*,
No. 11-cv-02827-JLK, slip op.
(D. Colo. Jan. 31, 2012)................................................................................................5

- iv -

707306_1

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(3)(B)(iii)................................................................................................................1
   §78u-4(a)(3)(B)(iii)(II) ......................................................................................................1, 3

Cal. Civ. Code
   §1633.1.............................................................................................................................6
   §1633.7.............................................................................................................................6

707306_1

Philip Marner, Jerry W. Jewell, individually and as Trustee for the Jerry W. Jewell Trust, Donald McAlpin and Randall Duck (the "Molycorp Shareholder Group" or "Group") respectfully submit this reply in further support of the Molycorp Shareholder Group's motion for appointment as lead plaintiff and approval of its selection of counsel.

## I.    PRELIMINARY STATEMENT

With losses exceeding $700,000, and having made a *prima facie* showing of adequacy and typicality, the Molycorp Shareholder Group is presumptively the "most adequate plaintiff" under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).[1] The Group's losses are more than twice the amount claimed by the next closest competing movant and more than all competing movants combined.[2]  Moreover, Philip Marner ("Marner"), a member of the Molycorp Shareholder Group, asserts the largest individual loss of any movant ($396,816).[3]

Once triggered, the strong presumption of adequacy can be rebutted only with "proof" that the group is either atypical or inadequate.  *See In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002); *see also* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  No such "***proof***" exists.

Recognizing the Molycorp Shareholder Group's presumptive status, two competing movants, Gordon Bratter ("Bratter") and Edward Alexander ("Alexander"), ignore evidence before the Court and argue that the Group has not met the standard for appointing groups in this District because the

---

[1]    All emphasis is added and citations and footnotes are omitted unless otherwise noted.

[2]    *See In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-REB-KLM, 2008 WL 4298316, at *2 n.2 (D. Colo. Sept. 17, 2008) ("court decisions support" assessing losses under the last-in-first-out analysis).

[3]    *See Goldstein v. Puda Coal, Inc.*, No. 11 Civ. 02598, 2011 WL 6075861, at *7 (S.D.N.Y. Dec. 6, 2011) (appointing group including member asserting largest individual loss); *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 533 (N.D. Cal. 2009) (same).

- 1 -

Group's members do not have a pre-existing relationship. *See* Dkt. No. 39 ("Alexander Opp.") at 4-9; Dkt. No. 38 ("Bratter Opp.") at 5-12.

The PSLRA does not require a pre-existing relationship for the appointment of a group. *See Sabbagh v. Cell Therapeutics, Inc.*, No. C10-414MJP, 2010 WL 3064427, at \*4 (W.D. Wash. Aug. 2, 2010) (recent "trend" "seems to be away from a blanket prohibition against 'lead plaintiff groups' with no pre-existing relationship . . . ."). Indeed, courts in this District have noted that unrelated movants may be appointed if the group's cohesiveness is established. *See In re Spectranetics Corp. Sec. Litig.*, No. 08-cv-02048-REB-KLM, 2009 WL 1663953, at \*6 (D. Colo. June 15, 2009); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, No. 09-cv-00200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706, at \*11 (D. Colo. May 4, 2009). The Molycorp Shareholder Group meets this standard. The Group has provided a detailed Joint Declaration (Dkt. No. 32-1) ("Joint Decl.") and a Supplemental Joint Declaration ("Supp. Decl."),[4] establishing the Group's cohesiveness and commitment to overseeing counsel. Rather than offering general assurances, the Joint Declaration provides specific details about, *inter alia*, how the Group will function (Joint Decl., ¶¶11, 13, 15-16), how potential disputes will be resolved (*id.*, ¶12), the mechanisms the Group will use to communicate with each other and counsel (*id.*, ¶11) and specific protocols implemented by the Group to ensure proper oversight of counsel (*id.*, ¶¶14-15). *See Level 3*, 2009 U.S. Dist. LEXIS 44706, at \*15 (setting forth criteria for appointment of a group). The Group's members have also provided information about their backgrounds and investment experience – which establishes that the Group collectively has over 100 years of experience investigating in the market. *See* Joint Decl., ¶¶2-5. In contrast, neither Bratter

---

[4]     *See* Declaration of Jeffrey A. Berens in Support of the Molycorp Shareholder Group's Reply Memorandum in Further Support of Its Motion for Appointment as Lead Plaintiff ("Berens Reply Decl."), Ex. A.

- 2 -

nor Alexander provided any evidence about their qualifications or ability to oversee counsel.

Further, the Supplemental Declaration demonstrates the Group's ongoing commitment to actively direct this action and specifically rejects arguments speculating that the Group is not cohesive or was unaware of the joint motion made on its behalf. *See, e.g.*, Bratter Opp. at 6, 11. These declarations establish the Group's ability to "work together to actively oversee the litigation and to monitor the work of counsel." *Spectranetics*, 2009 WL 1663953, at *6.

Finally, Alexander's arguments against Marner's financial interest and typicality are baseless. *See* Section II.B.2, *infra*.

As such, the presumption which lies in favor of the Molycorp Shareholder Group has not been rebutted and the Group should be appointed as lead plaintiff.

## II.    ARGUMENT

### A.    The Molycorp Shareholder Group Is the Most Adequate Plaintiff

The Molycorp Shareholder Group asserts the largest overall loss of any movant before the Court and has also made a showing of adequacy and typicality.  Accordingly, the Group is presumptively the "most adequate plaintiff" under the PSLRA.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  Once the PSLRA's presumption of adequacy attaches, as it has to the Molycorp Shareholder Group, movants seeking to rebut the presumption must produce "***proof***" that the presumptive lead plaintiff will not protect the class or is subject to unique defenses. *See id.*  Mere speculation based on hypothetical arguments is not proof.  *See In re SemGroup Energy Partners, L.P., Sec. Litig.*, No. 08-CV-425-GKF-PJC, 2008 WL 4826318, at *9 (N.D. Okla. Oct 27, 2008) ("speculative assertions are insufficient").

### 1.    The Molycorp Shareholder Group Has Established Its Cohesion

Notwithstanding the demanding evidentiary standard required to rebut the Molycorp

- 3 -

707306_1

Shareholder Group's status under the PSLRA, *see id.*, Alexander and Bratter suggest that the Group – consisting of four investors – has not demonstrated its cohesiveness. This is plainly wrong.

The PSLRA "explicitly contemplates that a 'member or members of the purported plaintiff class,' including a 'group of persons,' may be appointed lead plaintiff." *Level 3*, 2009 U.S. Dist. LEXIS 44706, at *10. "In certain circumstances, courts have found no impropriety with the appointment of a group of previously unrelated plaintiffs as lead plaintiffs." *Id.* Indeed, courts in the Tenth Circuit have appointed unrelated movants as lead plaintiff if cohesiveness is established. *See, e.g.*, *Spectranetics*, 2009 WL 1663953, at *6 ("certifications and declarations submitted by the members . . . demonstrate that the [group] . . . can and will work together to actively oversee the litigation and to monitor the work of counsel"); *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2010 WL 749864, at *2 (D. Colo. Mar. 3, 2010) (appointing group including unrelated members); *In re Ribozyme Pharm. Sec. Litig.*, 192 F.R.D. 656, 660 (D. Colo. 2000) (allowing aggregation of four members); *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 614 (W.D. Okla. 2009) ("the PSLRA 'contains *no requirement* mandating that the members of a proper group be 'related'. . . ."); *In re Nature's Sunshine Prods.*, No. 2:06-CV-267 TS, 2006 WL 2380965, at *1 (D. Utah Aug. 16, 2006) (appointing group of unrelated members and noting that "[t]he members of the group have also submitted affidavits demonstrating the cooperative intentions and efforts of the group"). Moreover, the recent "trend" under the PSLRA is to permit small groups of investors to act as lead plaintiff even if they lack a pre-existing relationship. *See Cell Therapeutics*, 2010 WL 3064427, at *4; *see also In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *4

707306_1

(S.D. Cal. Jan. 5, 2004) ("*majority* of courts" allow aggregation).[5]

Courts that do require an evidentiary showing before appointing an unrelated group focus on the group's ability to oversee an action and monitor counsel. *See Spectranetics*, 2009 WL 1663953, at *6; *Schonfield v. Dendreon Corp.*, No. C07-800MJP, 2007 WL 2916533, at *2 (W.D. Wash. Oct. 4, 2007) ("groups with no pre-litigation connection should submit a declaration providing information about the group's members, its structure and its intended functioning"). [6] Consistent with the showing required by courts in the District, the Group has provided a detailed Joint Declaration and Supplemental Declaration establishing, among other things:

- Why the Group decided to jointly seek appointment as lead plaintiff in this action. *See* Joint Decl., ¶8 (the Group's "financial losses" motivated its members to come together "to gain the advantages of joint decision-making and to provide the class broad representation");
- The Group's professional backgrounds and years of investment experience. *See id.*, ¶¶2-5;
- The Group's goals for the litigation and each member's commitment to act as a fiduciary for the class. *See id.*, ¶9;

---

[5]     Bratter's reliance on *In re Oppenheimer Rochester Funds Group Sec. Litig.*, No. 09-md-02063-JLK-KMT, 2009 U.S. Dist. LEXIS 113555 (D. Colo. Nov. 18, 2009), in support of the assertion that a lead plaintiff group must always have a pre-litigation relationship is misplaced. *See generally, In re Cendant Corp. Litig.*, 264 F.3d 201, 268-69 (3d Cir. 2001) (considering motion made by a group); *Cavanaugh*, 306 F.3d at 731 (same). In *Oppenheimer*, Judge Kane, overseeing a massive multi-district litigation consisting of multiple overlapping class actions was tasked with appointing lead plaintiffs in seven different sets of related litigation. Judge Kane initially rejected all of the lead plaintiff motions and instructed movants to re-file their motions adhering to several rules, including that any groups must have a pre-litigation relationship. Judge Kane, however, did not intend for a blanket pre-litigation relationship rule, as just months ago, in *Weston v. Ciber, Inc.*, No. 11-cv-02827-JLK, slip op. (D. Colo. Jan. 31, 2012), two unrelated investors were appointed despite defendants arguments, based on *Oppenheimer*, that there was no pre-litigation relationship. Berens Reply Decl., Ex. B.

[6]     *See also Cell Therapeutics*, 2010 WL 3064427, at *5 (a pre-existing relationship "is not required if the resulting group is small and cohesive enough such that it can adequately control and oversee the litigation").

- 5 -

- Specific mechanisms adopted by the Group to ensure proper supervision of counsel and eliminating duplication of work. *See id.*, ¶¶11, 14-15;[7]

- The Group's commitment to communicating with one another and to function apart from its lawyers to drive the litigation in the class' best interests. *See* Joint Decl., ¶11;

- The Group's enactment of a specific protocol for resolving disputes in the unlikely event any arise. *See id.*, ¶12;[8] and

- The Group's pre-motion approval of the relief sought by the Group's motion. *See* Supp. Decl., ¶4. The Supplemental Declaration unquestionably demonstrates that the members of the Molycorp Shareholder Group were aware of the identities of their co-members and agreed to jointly move for appointment as lead plaintiff. *See id.*, ¶5.[9]

---

[7] The Group has implemented specific protocols to ensure that proposed co-lead counsel will prosecute the class' claims in an efficient manner. *See* Joint Decl., ¶14. Accordingly, Bratter's speculation that appointing co-lead counsel may lead to inefficiencies (Bratter Opp. at 13) is unfounded. The court in *Green Mountain* rejected a similar argument less than two weeks ago. *See La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 11-cv-00289-wks, slip op. at 9 (D. Vt. Apr. 27, 2012) ("co-lead counsel may be approved where the parties show that 'there will be 'no duplication of attorneys' services'"), Berens Reply Decl., Ex. C; *see also Richman v. Goldman Sachs Group, Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) (same). The firms selected by the Group here have a history of working together and avoiding inefficiencies while ensuring the best recovery for the class. *See e.g., In re Wachovia Preferred Sec. and Bond/Notes Litig.*, No. 09-cv-06351-RJS (S.D.N.Y.) (settling claims for $627 million – the largest recovery in history for class claims brought solely under the Securities Act).

[8] Bratter and Alexander also speculate that the Group's decision to seek the guidance of a retired judge as a means to break any deadlocks between its members undermines the Group's ability to function cohesively. *See* Bratter Opp. at 9-10; Alexander Opp. at 8-9. First, employing a specific process for resolving disputes is one of the requirements for appointing a group under *Level 3*. 2009 U.S. Dist. LEXIS 44706, at *15. Second, courts presented with joint declarations containing, *inter alia*, nearly identical arbitration provisions have concluded that such declarations "***demonstrate[] . . . [a group's] commitment to protecting the members of th[e] putative class action***." *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658 SAS, 2011 WL 4444176, at *7 & n.50 (S.D.N.Y. Oct. 4, 2011); *see also* Berens Reply Decl. Ex. D, ¶7 (joint declaration in *Longtop* referencing arbitration provision). Finally, disagreeing with the Group's approach is an invitation for the Court to engage in an impermissible "beauty contest" among the movants. *See Cavanaugh,* 306 F.3d at 732 (plaintiff with the largest loss who is also typical and adequate ***"is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job***").

[9] Bratter makes the specious argument that Duck's signature is "defective" because it was an electronic signature made pursuant to Cal. Civ. Code §1633.1 *et seq*. *See* Bratter Opp. at 7 n.4; Dkt. No. 29-2 (Duck Certification). The California statute pursuant to which Duck's certification was signed clearly states that "[a] record or signature may not be denied legal effect or enforceability

- 6 -

707306_1

This evidence establishes "actual mechanisms" for the Group's operations, (*Level 3*, 2009 U.S. Dist. LEXIS 44706, at \*16), and "address[es] every concern raised by courts who have questioned the ability of previously-unrelated group members to cohesively, proactively represent their class." *Cell Therapeutics*, 2010 WL 3064427, at \*6.[10]

Appointing as lead plaintiff a small cohesive group of investors like the Molycorp Shareholder Group – as opposed to one individual – provides extra protection to the class in the event a lead plaintiff later withdraws, or if defendants later successfully challenge one of the competing movants at class certification or beyond. *See In re Neopharm, Inc. Sec. Litig*., No. 02 C 2976, 2004 WL 742084, at \*3 n.1 (N.D. Ill. Apr. 7, 2004) (court-appointed lead plaintiff withdrew requiring the lead plaintiff process to be reopened years into the case because "this is not a situation where more than one lead plaintiff was appointed and the withdrawal of one lead plaintiff means that others still exist"). Group members also have the added benefit of conferring among one another and reaching decisions based on a thoroughly deliberative process. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998).

### B.      Marner Asserts the Largest Individual Loss of Any Movant

Marner's individual loss ($396,817) is on its own approximately ***32% greater*** than Bratter's

---

solely because it is in electronic form" and "[i]f a law requires a signature, an electronic signature satisfies the law." Cal. Civ. Code §1633.7. This District also recognizes the validity of electronic signatures. D.C. COLO.L.Civ.R. 5.6(A) ("the court will permit materials to be filed, ***signed***, and verified by electronic means"). Thus, Duck's electronic signature is not defective. In any case, Mr. Duck executed two declarations affirming his commitment to serve as a lead plaintiff.

[10]      Unlike the group ultimately rejected in *Level 3,* which did not submit a joint declaration until filing its reply brief, the Molycorp Shareholder Group executed its Joint Declaration before filing its motion for appointment and "articulate[d] ***actual mechanisms*** for cooperation, dispute resolution, [and] communication among the group members and counsel." *Level 3*, 2009 U.S. Dist. LEXIS 44706, at \*16; *see also* Joint Decl. As such, the declaration submitted in *Level 3* is distinguishable.

- 7 -

asserted loss (approximately $300,000) and *234% greater* than Alexander's asserted loss (approximately $118,497). Accordingly, Marner would be entitled to PSLRA's presumption without aggregating with the other members of the Molycorp Shareholder Group.[11]

### 1. Marner May Be Considered Individually

Although the Group believes the appointment of all its members would be in the class' best interests, in order to allow the class' claims to proceed without any delay, the Group authorized counsel to seek the appointment of Marner should the Court decline to appoint a group. *See* Dkt. No. 27 at 7 n.2; Supp. Decl., ¶4.[12] Contrary to the assertions made in the competing movants' oppositions, this alternative relief was approved by every member of the Group *prior to the initial motion* and is consistent with the PSLRA's mandate to appoint a lead plaintiff with "largest financial interest" in the relief sought by the class. *See* Supp. Decl., ¶4.

Further, courts can, *sua sponte*, sever groups to select a lead plaintiff. *See Surebeam*, 2004

---

[11] Because Marner alone possesses the largest individual loss, concerns about aggregating losses to achieve the largest financial interest are not implicated here as "it is not necessary for the members of the . . . Group to aggregate themselves in order to overcome the largest stake requirement-*one of its members could meet that requirement by [himself]*." *See Akeena Solar*, 263 F.R.D. at 533; *see also Barnet v. Elan Corp.*, *PLC*., 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (group not formed in bad faith where "even were the Court to deconstruct the Group, two of its individual members would still have the 'largest financial interest'"). "It makes no practical difference if" the movant with the largest individual loss (Mr. Marner) "chooses to associate with other shareholders in order to further distance itself from the next proposed lead plaintiff." *Surebeam*, 2004 WL 5159061, at *5; *accord In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, No. 04-0265, 2004 WL 1221353 , at *4 (E.D. Pa. June 3, 2004).

[12] The Group's request, in the alternative, to appoint Marner in its opening motion is distinguishable from the one considered by the court in *Level 3* where "the Level 3 Plaintiffs Group *did not request* that any of its constituents be appointed as lead plaintiff individually in the event the Court declined to appoint the group." 2009 U.S. Dist. LEXIS 44706, at *17. Similarly, the Group's request is distinguishable from other such requests that have been rejected. *See Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (rejecting group's request to appoint individual member when first requested in group's reply brief); *Buettgen v. Harless*, 263 F.R.D. 378, 381 (N.D. Tex. 2009) (group failed to establish cohesiveness).

707306_1

WL 5159061, at *7 (courts "routinely break apart a proposed group in search of the most adequate plaintiff"); *Dendreon Corp.*, 2007 WL 2916533, at *3 (same). The Group's confirmation of an inherent power recognized by courts in no way undermines its cohesion. *Cf. Puda Coal*, 2011 WL 6075861, at *7 (group was not improper by its offer to sever).[13]

### 2.   Speculative Arguments Against Marner Are Baseless

#### a.   Alexander Cannot Claim the Largest Loss Under Any Analysis

Contrary to Alexander's assertion that Marner's "trading creates questions with respect to whether he can establish loss causation for the vast majority of the damages he claims," (Alexander Opp. at 12) courts have long recognized that "loss causation does not require full disclosure and can be established by partial disclosure during the class period which causes the price of shares to decline." *Montoya v. Mamma.com Inc.*, No. 05 Civ. 2313(HB), 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005); *see also Brown v. China Integrated Energy, Inc.*, No. CV 11-02559 MMM (PLAx), 2011 U.S. Dist. LEXIS 151131, at *39-42 (C.D. Cal. Aug. 29, 2011) (appointing movant selling shares after a partial corrective disclosure); *In re Gentiva Sec. Litig.*, No. 10-cv-5064 (ADS)(WDW), 2012 U.S. Dist. LEXIS 9177, at *20 (E.D.N.Y. Jan. 26, 2012) (same). Here, Alexander concedes that the only complaint filed in this action pleads a partial disclosure on September 20, 2011. *See* Alexander Opp. at 13 n.9; *see also* Dkt. No. 1, ¶¶23, 26 ("As a ***direct result*** of the disclosures on September 20, 2011 . . . the price of Molycorp common stock plummeted"); *id.*, ¶27. Accordingly, any member of the class selling shares after September 20, 2011 (and potentially earlier dates) – such as Mr. Marner – indisputably has recoverable losses under Alexander's own theory. The Group

---

[13]   Bratter's argument that the Group's (alternative) request to appoint Marner   is "gamesmanship" (Bratter Opp. at 12) was specifically rejected by the court in *Puda Coal*, 2011 WL 6075861, at *7 ("concerns" regarding the presumptive lead plaintiff's "willingness to sever" are "unpersuasive").

707306_1

has not abandoned any disclosures and there is no question that the Group is fully committed to maximizing recovery for all investors.[14]

### b.      Marner's Trading Does Not Subject Him to Unique Defenses

Finally, arguments that Marner is atypical because of his trading are meritless.  *See* Alexander Opp. at 11-12.  Marner is not a "day trader." [15]  Even if he were – which he is not – "the prevailing view . . . is that 'day and momentum traders have the same incentives to prove defendants' liability as all other class members, and *their presence in a securities class does not create intra-class conflicts*.'"  *Prefontaine v. Research in Motion Ltd.*, No. 11 Civ. 4068(RJS), 2012 WL 104770, at *4 (S.D.N.Y. Jan. 5, 2012) (alleged "day trader" who had over 21,000 transactions in a 6-month time period was "typical").

## III.      CONCLUSION

Accordingly, the Molycorp Shareholder Group requests its motion be granted in full.[16]

---

[14]      Even if Alexander's loss arguments are credited *he still cannot claim the largest loss*.  If losses are limited to the movants' post-partial disclosure sales and retained shares, the Group's losses would be $561,076, close to 5 times greater than Alexander's $118,497, and Marner's loss alone would still exceed Alexander's.  *Compare* Dkt. No. 29-3 *with* Dkt. No. 24-2.

[15]      "A day trader takes positions . . . and liquidates them *before* the close *of the same trading day*."  *Centurions v. Ferruzzi Trading Intern., S.A.*, No. 89 C 7009, 1994 WL 114860, at *12 n.15 (N.D. Ill. Jan. 7, 1993).  Here, Marner retained thousands of shares over trading days.  *See e.g.*, Dkt. No. 29-2 (compare final Class Period purchase in July 2011 with final Class Period sales in September 2011); Dkt. No. 29-3 (showing losses on *retained* shares and shares sold in September 2011).  Accordingly, Marner is not a day trader.

[16]      Unable to muster the requisite "proof" sufficient to rebut the group's presumption of adequacy, Bratter asks the Court to allow him to conduct a fishing expedition.  *See* Bratter Opp. at 12 n.6.  Speculation and innuendo, however, do not constitute a "reasonable basis" warranting discovery under the PSLRA.  Rather, the PSLRA "is quite clear on this score: an objecting class member is entitled to discovery '*only if* the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.'"  *Cendant*, 264 F.3d at 270 (noting that district courts should "take care to prevent the use of discovery to harass presumptive lead plaintiffs," something the PSLRA was "meant to guard against").  Bratter cannot meet this standard.

- 10 -

DATED:  May 8, 2012

DYER & BERENS LLP
ROBERT J. DYER III
JEFFREY A. BERENS


s/ JEFFREY A. BERENS
JEFFREY A. BERENS

303 East 17th Avenue, Suite 300
Denver, CO  80203
Telephone:  303/861-1764
303/395-0393 (fax)
bob@dyerberens.com
jeff@dyerberens.com

[Proposed] Liaison Counsel for Plaintiffs

ROBBINS GELLER RUDMAN
  & DOWD LLP
TRIG R. SMITH
TRICIA L. McCORMICK
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

KESSLER TOPAZ MELTZER
  & CHECK, LLP
NAUMON A. AMJED
RYAN T. DEGNAN
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)

[Proposed] Co-Lead Counsel for Plaintiffs

- 11 -

707306_1

CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 8, 2012.

s/JEFFREY A. BERENS
JEFFREY A. BERENS

DYER & BERENS LLP
303 East 17th Avenue, Suite 300
Denver, CO  80203
Telephone:  303/861-1764
303/395-0393 (fax)

E-mail: jeff@dyerberens.com

707306_1

## Mailing Information for a Case 1:12-cv-00292-WJM-KMT

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey Allen Berens**
  jeff@dyerberens.com,jeffreyberens@comcast.net,darby@dyerberens.com

- **Travis Shenandoah Biffar**
  tbiffar@jonesday.com,kamarkwick@jonesday.com

- **Gregory J. Kerwin**
  gkerwin@gibsondunn.com,Denver_USDC@gibsondunn.com,AKostecka@gibsondunn.com,lhoward@gibsondunn.com

- **Allison Kaye Kostecka**
  akostecka@gibsondunn.com,lapodaca@gibsondunn.com

- **Eric Neil Landau**
  elandau@jonesday.com,kamarkwick@jonesday.com

- **Charles Walter Lilley**
  clilley@lilleylaw.com

- **Rana Nader**
  rnader@jonesday.com,epete@jonesday.com

- **Jeffrey S. Nobel**
  jnobel@izardnobel.com,nkulesa@izardnobel.com

- **Nicole Susan Schram**
  nikki@jmvpclaw.com,monica@jmvpclaw.com

- **Kip Brian Shuman**
  kip@shumanlawfirm.com,rusty@shumanlawfirm.com

- **The Allen Group**
  fmcconville@faruqilaw.com

- **Jeffrey Mark Villanueva**
  jeff@jmvpclaw.com,nikki@jmvpclaw.com,monica@jmvpclaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)