UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENT J. RODRIGUEZ, Individually and On Behalf of All Others Similarly Situated,<br><br>                     Plaintiff,<br><br>       v.<br><br>DRAFTKINGS INC. f/k/a DIAMOND EAGLE ACQUISITION CORP., JASON D. ROBINS, JASON K. PARK, JEFF SAGASKY, and ELI BAKER,<br><br>                     Defendants. | Case No. 1:21-cv-005739-PAE<br><br>CLASS ACTION |
| MICHIEL TEN HOORN, Individually and On Behalf of All Others Similarly Situated,<br><br>                     Plaintiff,<br><br>       v.<br><br>DRAFTKINGS INC. f/k/a DIAMOND EAGLE ACQUISITION CORP., JASON D. ROBINS, JASON K. PARK, JEFF SAGASKY, and ELI BAKER,<br><br>                     Defendants. | Case No. 1:21-cv-06497-PAE |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF TIM KAINTZ'S
MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT
AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF COUNSEL, AND
<u>IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

I.  PRELIMINARY STATEMENT ................................................................................. 1

II. ARGUMENT ............................................................................................................. 2

    A.  Mr. Kaintz is the presumptive lead plaintiff. ................................................. 2

        i.  Mr. Kaintz has the largest financial interest of all competing movants .............. 2

        ii.  Mr. Kaintz satisfies Rule 23's requirements of typicality and adequacy. ........... 4

    B.  There is no proof capable of rebutting Mr. Kaintz's lead plaintiff presumption. ....... 7

        i.  Mr. Kaintz's trading patterns do not subject him to unique defenses. ................. 8

        ii.  Miniscule options trading does not subject Mr. Kaintz to unique defenses. ..... 12

    C.  Mr. Kaintz's choice of counsel should be approved. ................................................ 14

    D.  All competing Lead Plaintiff motions should be denied. .......................................... 14

III. CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Bo Young Cha v. Kinross Gold Corp.*,
No. 12-cv-1203 (PAE), 2012 WL 2025850 (S.D.N.Y. May 31, 2012) ..................................... 2

*Chahal v. Credit Suisse Grp. AG*,
No. 18-cv-02268 (AT)(SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018),
*objections overruled sub nom. Chahal v. Credit Suisee Grp. AG,*
No. 18-cv-2268 (AT)(SN), 2018 WL 6803377 (S.D.N.Y. Aug. 27, 2018) ............................. 14

*Chauhan v. Intercept Pharm.*,
No. 21-cv-00036 (LJL), 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ................................. 7, 12

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
No. 20-cv-9132 (AJN), 2021 WL 396343 (S.D.N.Y. Feb. 4, 2021) ......................................... 3

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.,*
No. 20-cv-2031 (JSR), 2020 WL 2614703 (S.D.N.Y. May 22, 2020) ..................................... 6

*Dura Pharms. v. Brudo,*
544 U.S. 336 (2005) ................................................................................................................ 2, 3

Freudenberg v. E*Trade Fin. Corp.,
No. 07-cv-8538, 2008 WL 2876373 (S.D.N.Y. July 16, 2008) ............................................. 12

*Glauser v. EVCI Ctr. Colls. Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) ............................................................................................. 5

Goldstein v. Puda Coal, Inc.,
827 F. Supp. 2d 348, 350 (S.D.N.Y. 2011) ........................................................................... 12

*Gordon v. Sonar Cap. Mgt. LLC*,
962 F. Supp. 2d 525 (S.D.N.Y. 2013) .................................................................................... 11

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ..................................................................................................... 6

In re Donkenny Inc. Sec. Litig.,
171 F.R.D. 156 (S.D.N.Y. 1997) ........................................................................................... 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009) ..................................................................................................... 10

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
No. 20-cv-4420 (PAE), 2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020) ........................ 2, 4, 7, 8

*In re Initial Pub. Offering Sec. Litig.*,
  227 F.R.D. 65 (S.D.N.Y. 2004)
  *rev'd on other grounds,* 471 F.3d 24 (2d Cir. 2006)......................................................................... 8

*In re LightInTheBox Holding Co., Ltd. Sec. Litig.*,
  No. 13-cv-6016 (PKC), 2013 WL 6145114 (S.D.N.Y. Nov. 21, 2013) .................................... 3

*In re Millennial Media, Inc. Sec. Litig.*,
  87 F. Supp. 3d 563 (S.D.N.Y. 2015) ................................................................................ 2, 4

*In re Moody's Corp. Sec. Litig.*,
  274 F.R.D. 480 (S.D.N.Y. 2011) ..................................................................................... 10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  199 F.R.D. 119 (S.D.N.Y.2001) ...................................................................................... 13

*In re Petrobras Sec. Litig.*,
  312 F.R.D. 354 (S.D.N.Y. 2016) ..................................................................................... 10

*In re SLM Corp. Sec. Litig.*,
  No. 08-cv-1029 (WHP), 2012 WL 209095 (S.D.N.Y. Jan. 24, 2012)..................................... 13

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  No. 20-cv-8585 (LJL), 2021 WL 148752 (S.D.N.Y. Jan. 15, 2021) ........................................ 7

In re Virtus Inv. Partners, Inc. Sec. Litig.,
  No. 15-cv-1249, 2017 WL 2062985 (S.D.N.Y. May 15, 2017) .............................................. 10

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ..................................................................................... 11

*Karp v. Diebold Nixdorf, Inc.*,
  No. 19-cv-6180 (LAP), 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019),
  *adhered to on reconsideration,*
  No. 19-cv-6180 (LAP), 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019)....................................... 8

*Khunt v. Alibaba Grp. Holding Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015) .............................................................................. 14

*Kniffin v. Micron Tech., Inc.*,
  379 F. Supp. 3d 259 (S.D.N.Y. 2019) ................................................................................ 2

*Micholle v. Ophthotech Corp.*,
  No. 17-cv-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) .................................... 13

*Pearlstein v. BlackBerry Ltd.*,
  No. 13-cv-7060 (CM), 2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) .................................... 8, 10

*Perez v. HEXO Corp.*,
 No. 19-cv-10965 (NRB), 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020)............................. 5, 7, 8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, Inc.,
 229 F.R.D. 395 (S.D.N.Y. 2004) .......................................................................................... 9

*Prefontaine v. Research in Motion Ltd.*,
 No. 11-cv-4068 (RJS), 2021 WL 104770 (S.D.N.Y. Jan. 5, 2012) ........................................ 9

*Sallustro v. CannaVest Corp.*,
 93 F. Supp. 3d 265 (S.D.N.Y. 2015) .................................................................................... 3

*Vladimir v. Bioenvision, Inc.*,
 No. 07-cv-6416 (SHS)(AJP), 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007)........................... 4

*Wilson v. LSB Indus., Inc.*,
 No. 15-cv-7614 (RAG)(WG), 2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) ........................ 10

**Other Authorities**

15 U.S.C. § 78u-4(a)(3)(B)(i) ..................................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc)................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)............................................................................................... 2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(v) ............................................................................................. 13

Federal Rules of Civil Procedure 42(a) ....................................................................................... 1

Movant Tim Kaintz ("Mr. Kaintz") respectfully submits this memorandum in further support of his motion for consolidation of the above-captioned related actions, appointment as Lead Plaintiff and approval of his selected counsel, Roche Freedman LLP ("Roche Freedman") as Lead Counsel for the Class ("Motion") (ECF No. 17),[1] and in opposition to competing Lead Plaintiff motions filed by movants, Robert Mendoza ("Mr. Mendoza") (ECF No. 9), Mario E. Ernst ("Mr. Ernst") (ECF No. 12), Stephen Goering ("Mr. Goering") (ECF No. 15), Robert Downs ("Mr. Downs") (ECF No. 18), and Walter Marino ("Mr. Marino") (ECF No. 24).[2]

## I.   PRELIMINARY STATEMENT

The PSLRA directs the Court to appoint as lead plaintiff the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that the "most adequate plaintiff" is the class member that: (1) timely "made a motion in response to a notice"; (2) has the "largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc).

As discussed at length in Mr. Kaintz's Motion, he satisfies all three requirements and is therefore entitled to the PSLRA's presumption that he is the "most adequate plaintiff." Specifically, Mr. Kaintz: (1) timely moved for appointment as lead plaintiff; (2) lost approximately $2,242,155 due to the alleged fraud (*i.e., 5x* and *10x* more than the approximate loss of the competing movants with the second and third highest losses); and (3) satisfies the "pertinent" factors of Rule 23, "adequacy [and] typicality." *Bo Young Cha v. Kinross Gold Corp.*, No. 12-cv-

---

[1] Capitalized terms used, but not defined, herein shall have the meanings ascribed in Mr. Kaintz's Memorandum of Law in Support of his Motion. ECF No. 23. Unless otherwise noted, all emphasis has been added, and internal citations have been omitted.

[2] On September 15, 2021, Mr. Goering, Mr. Mendoza, and Mr. Ernst filed a Notice of Non-Opposition to Competing Lead Plaintiff Motions. *See* ECF Nos. 29, 30, 31.

1203 (PAE), 2012 WL 2025850, at *6 (S.D.N.Y. May 31, 2012).

Moreover, and as explained below, there can be no serious contention that Mr. Kaintz "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Consequently, no other movant can rebut the PSLRA's presumption that Mr. Kaintz is the "most adequate plaintiff," and thus, the Court should appoint him lead plaintiff.

## II.    ARGUMENT

### A.    Mr. Kaintz is the presumptive lead plaintiff.

#### i.    Mr. Kaintz has the largest financial interest of all competing movants.

The PSLRA does not specify how to calculate the "largest financial interest," but courts in this District generally consider the *Lax* Factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 569 (S.D.N.Y. 2015) (Engelmayer, J.); *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-cv-4420 (PAE), 2020 WL 5548856, at *4 (S.D.N.Y. Sept. 16, 2020). "Of these factors, courts have consistently held that the fourth, the magnitude of the loss suffered, is most significant." *Id.* at *4 (collecting cases). "[T]he overwhelming trend both in this district and nationwide has been to use LIFO to calculate such losses." *Bo Young Cha,* 2012 WL 2025850, at *3 (collecting cases).

There is one caveat, however. After the Supreme Court's decision in *Dura Pharms. v. Brudo,* 544 U.S. 336 (2005), "the recent trend in this district is for movants to adjust their LIFO calculations to remove any losses arising from securities that were bought and sold before a defendant's corrective disclosure." *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 264 (S.D.N.Y. 2019). "In *Dura* [], the Supreme Court held that a plaintiff in a private securities fraud

action must prove a causal connection between plaintiff's alleged loss and the defendant's fraudulent conduct" and noted "that where 'the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.'" *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (quoting *Dura*, 544 U.S. at 342, 345-46). Consequently, "when evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit . . . do not take into account losses from shares sold prior to corrective disclosures." *Id.* That's because "[w]hile the *Dura* court addressed a motion to dismiss, the Court's reasoning applies with equal force to a motion to appoint [lead plaintiff and] lead counsel." *Id.* (citing *In re LightInTheBox Holding Co., Ltd. Sec. Litig.,* No. 13-cv-6016 (PKC), 2013 WL 6145114, at *3 (S.D.N.Y. Nov. 21, 2013)).

In sum, "the court would be abdicating its responsibility under the PSLRA if it were to ignore [the issue of loss causation at the lead plaintiff] stage" as "[r]elying on losses that, under *Dura*, are clearly not recoverable is irreconcilable with this Court's duty to ascertain which plaintiff has the greatest financial interest in this litigation." *Id*. Thus, "only the losses that occurred after the first public disclosure will be considered in determining which potential lead plaintiff has the greatest financial interest." *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, No. 20-cv-9132 (AJN), 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021).

As demonstrated below, Mr. Kaintz has, by far, the largest financial interest in this litigation, regardless of the Court's application of LIFO or *Dura*-adjusted LIFO. For the Court's convenience, the chart below sets for each movant's financial interest under the *Lax* Factors calculating approximate losses using the traditional LIFO method and *Dura*-adjusted LIFO:[3]

---

[3] The financial interest expressed in the chart encompasses the movant's trades in DraftKings common stock and stock options, if any.

| Movant | Net Funds Expended | Net Shares Purchased | Retained Shares | LIFO Loss | *Dura*-adjusted LIFO Loss |
|---|---|---|---|---|---|
| Mr. Kaintz | *$175,023,299* | *3,021,427* | *100,001* | *$2,242,155* | *$1,918,875* |
| Mr. Downs | $9,638,226 | 178,100 | 6,500 | $424,946 | $47,254 |
| Mr. Marino | $9,092,145.52 | 157,405 | 18,564 | $217,456.28 | $513,288 |

Mr. Kaintz expended more funds, purchased more shares, retained more shares, and suffered a **significantly** larger loss than any other movant (under either calculation). Mr. Kaintz's LIFO loss is, **5x** and **10x** greater than the that of Mr. Downs and Mr. Marino, respectively. Likewise, Mr. Kaintz's loss under the *Dura*-adjusted LIFO method is **nearly 4x** greater than that of Mr. Marino**,** and **over 40x** greater than that of Mr. Downs. Indeed, relative to Mr. Kaintz, the other movants' "financial interests are far too small . . . for them to credibly bid for appointment." *In re Millennial Media Inc. Sec. Litig.*, 87 F. Supp. 3d at 570 (finding that losses of $40K, $95K, and $170K "relative to" losses of the two top movants of $1.75 million and $3.6 million were "far too small . . . for them to credibly bid for appointment").

ii.     Mr. Kaintz satisfies Rule 23's requirements of typicality and adequacy.

"Once the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements." *Vladimir v. Bioenvision, Inc.*, No. 07-cv-6416 (SHS)(AJP), 2007 WL 4526532, at *6 (S.D.N.Y. Dec. 21, 2007). The PSLRA's final requirement is that the movant "satisfy Rule 23's requirements for class certification: numerosity, commonality, typicality, and adequacy." *In re Hebron*, 2020 WL 5548856, at *5. "At this early stage of litigation, however, only the last two factors—typicality and adequacy—are pertinent." *Id*. As detailed in Mr. Kaintz's Motion, he easily satisfies both the typicality and adequacy requirements of Rule 23.

"The claims of a plaintiff are typical of the class when their claims and injuries arise from

the same conduct from which the other class members' claims and injuries arise." *In re Hebron*, 2020 WL 5548856, at *5. Mr. Kaintz's and the Class's claims all arise from the same conduct by Defendants, and he will make the same legal arguments in support of Defendants' liability that other class members would. Like the Class he proposes to represent, he purchased DraftKings securities at a wrongfully inflated price and suffered a loss once the truth was revealed. To be sure, Mr. Kaintz has sworn that, like the other class members, he is a victim of Defendants' fraud, as his purchases were all made "based on [his] analysis of the stock." ECF No. 21-3, ¶2.

A lead plaintiff is adequate when they do "not have interests that are antagonistic to the class that [they] seek[] to represent and ha[ve] retained counsel that is capable and qualified to vigorously represent the interests of the class that [they] seek[] to represent." *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006). Mr. Kaintz's interests are perfectly aligned with, and are not antagonistic to, the Class's interests, and he has retained capable and qualified counsel that will vigorously represent the Class's interest. Roche Freedman has been appointed, and is serving as, lead counsel in numerous securities class actions nationwide, including in this District. *See* ECF No. 23, §IV.D.; ECF No. 21-4.

Indeed, Mr. Kaintz has demonstrated far more than a *preliminary* showing of adequacy. "In evaluating adequacy, courts also consider such factors as the available resources and experience of the proposed lead plaintiff which serve as a proxy for the movant's financial and legal sophistication and, in turn, the likelihood that the movant will play a meaningful role in limiting the lawyer-driven litigation that the PSLRA was designed to curtail." *Perez v. HEXO Corp.*, No. 19-cv-10965 (NRB), 2020 WL 905753, at *2 (S.D.N.Y. Feb. 25, 2020). Mr. Kaintz's PSLRA certification and declaration, filed with his Motion, evidence his significant resources and experience and that he has played, and will continue to play, a meaningful role in driving this

litigation. *See* ECF Nos. 21-1, 21-3.

Mr. Kaintz is a 53-year-old real estate developer with over 25 years of investing experience, and during the Class Period, he analyzed DraftKings stock and expended tens of millions of dollars buying DraftKings securities. *Id.* Prior to moving for appointment, Mr. Kaintz spoke with counsel to understand the "fiduciary responsibilities and obligations of the appointed Lead Plaintiff to the class" and if appointed, has agreed to "fulfill these responsibilities to the best of [his] abilities." ECF No. 21-3, at ¶¶4-5. He also attested to the understanding and responsibility of "overseeing and monitoring the progress of the litigation and coordinating with counsel to vigorously prosecute the case in a way that best serves the interests of the class," and "[i]n performing these duties, [he agreed to], among other things, review pleadings and motion papers, obtain regular status reports on the progress of the litigation, participate in discovery, and have input into litigation decisions, including settlement negotiations." *Id.* at ¶¶6-7.

Moreover, Mr. Kaintz is committed to "monitor and direct the efforts and activities of [his] proposed Lead Counsel" and to "call for a meeting . . . including on an emergency basis . . . and to reconvene future calls, as well as attend in-person meetings, and communicate via email, as often and regularly as necessary to ensure responsible oversight of counsel." *Id*. at ¶8. Mr. Kaintz has already demonstrated his sophistication and ability to serve in a fiduciary role by negotiating with counsel and successfully obtaining a fee cap that is substantially less than the standard 33.3% typically seen in securities cases. *See id*.; *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.,* No. 20-cv-2031 (JSR), 2020 WL 2614703, at *3 (S.D.N.Y. May 22, 2020) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001) ("One of the best ways for a court to ensure that it will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated a willingness and ability to select competent class counsel and to

negotiate a reasonable retainer agreement.")).

Accordingly, Mr. Kaintz more than satisfies the preliminary showing of Rule 23's adequacy and typicality requirements.

**B.      There is no proof capable of rebutting Mr. Kaintz's lead plaintiff presumption.**

As demonstrated above, Mr. Kaintz is entitled to the PSLRA's presumption as the "most adequate plaintiff" to serve as lead plaintiff. Again, based on his analysis of the stock, Mr. Kaintz expended more funds, purchased and retained more shares, and suffered a greater financial loss than any competing movant. Mr. Kaintz is sophisticated, experienced, and actively involved in this litigation and has access to the resources necessary to vigorously prosecute this case. Thus, pursuant to the PSLRA and other statutory requirements, Mr. Kaintz is perfectly suited to represent the Class. *See Perez*, 2020 WL 905753, at *2.

"To rebut the presumption . . . there must be 'proof' of a non-speculative risk that the movant will not be adequate." *In re Hebron*, 2020 WL 5548856, at *7. And while Courts in this District have recognized there is no firmly established meaning for what constitutes "proof," it's treated as "synonymous with evidence." *Id*. Accordingly, "mere speculation is insufficient to rebut the presumption of adequacy." *Chauhan v. Intercept Pharm.*, No. 21-cv-00036 (LJL), 2021 WL 235890, at *6 (S.D.N.Y. Jan. 25, 2021).

Consequently, to the extent any movants seek to attack Mr. Kaintz's typicality or adequacy—for example, based on his robust trading history or options trading—these challenges would rely solely on speculation, without sufficient proof to successfully rebut his presumption as the "most adequate plaintiff" (or his sworn declaration in support thereof). *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 20-cv-8585 (LJL), 2021 WL 148752, at *10 (S.D.N.Y. Jan. 15, 2021) ("allegations" challenging presumptive lead plaintiff's typicality or adequacy "have been found to be insufficient" when the opposing movants fails "to offer any proof" and "a declaration from the

presumptive lead plaintiff" contradicts the allegations).

       i.    <u>Mr. Kaintz's trading patterns do not subject him to unique defenses.</u>

Mr. Kaintz engaged in a significant number of trades during the Class Period—including buying and selling some DraftKings securities in the same day—but as explained below, these trading patterns do not render him atypical or subject him to unique defense such that there is a "real risk that the idiosyncrasies of [his] purchases would become . . . a distraction at trial." *In re Hebron*, 2020 WL 5548856, at \*7.

Historically, competing movants and defendants have attempted to seize on sophisticated trading patterns like day or momentum trading to disqualify lead plaintiff movants or oppose class certification. But these efforts have failed as "courts in this Circuit have generally rejected the argument that a day trader is barred from representing a class in a securities action for reasons of atypicality.'" *Pearlstein v. BlackBerry Ltd.*, No. 13-cv-7060 (CM), 2021 WL 253453, at \*10 (S.D.N.Y. Jan. 26, 2021); *Perez*, 2020 WL 905753, at \*4 (finding day trading "immaterial . . . in light of the fact that the prevailing view in this Circuit is that day and momentum traders have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts"); *Karp v. Diebold Nixdorf, Inc.*, No. 19-cv-6180 (LAP), 2019 WL 5587148, at \*5 (S.D.N.Y. Oct. 30, 2019), *adhered to on reconsideration*, No. 19-cv-6180 (LAP), 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019) (finding argument that lead plaintiff movant was inadequate due to day trading "unavailing" in light of "the prevailing view in the Second Circuit"); *In re Initial Pub. Offering Sec. Litig.,* 227 F.R.D. 65, 95 (S.D.N.Y. 2004) *rev'd on other grounds,* 471 F.3d 24 (2d Cir. 2006) (certifying a class where class representatives "were short sellers, momentum traders or day traders," and rejecting Defendants' argument that they "therefore cannot avail themselves of a presumption of reliance on stock

prices").[4]

Additionally, any argument to the contrary by counsel for Mr. Downs or Mr. Marino would be disingenuous, as Pomerantz LLP ("Pomerantz") and Robbins Geller Rudman & Dowd LLP ("RGRD") have both argued in courts around the country that day trading does ***not*** render a lead plaintiff applicant atypical or inadequate.[5]

Moreover, an analysis of the trading history provided by the five lead plaintiff applicants in this case demonstrates that it is very typical for an investor in DraftKings securities to have bought and sold on the same day, as most of the competing movants did just that. *See* ECF No. 22-1 (Mr. Downs bought and sold shares within the same day on 12/22/20, 3/4/21, 4/5/21, 5/6/21, 5/7/21, 5/13/21, 5/20/21, 5/21/21, 5/27/21, 6/1/21, 6/3/21, 6/4/21, and 6/9/21); ECF No. 26-3 (Mr. Marino bought and sold shares within the same day on 11/20/20, 2/4/21, 2/5/21, 2/8/21, 2/24/21,

---

[4] *See also Prefontaine v. Research in Motion Ltd.*, No. 11-cv-4068 (RJS), 2021 WL 104770, at *4 (S.D.N.Y. Jan. 5, 2012) (finding "characterization of [investor] as a 'day trader' does not prove that [he] is subject to a unique defense or rebut the presumption that [he] should be appointed lead plaintiff"); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, Inc., 229 F.R.D. 395, 415 (S.D.N.Y. 2004) (allegation that investor was a "massive day trading operation—using [a] program [] to dart in and out of NYSE stocks in small trades, thousands of times a day" did "not suffice to establish that [it] is subject to a unique defense"); *In re Turquoise Hill Resources Sec. Litig.*, No. 1:13-cv-08846, ECF No. 36 (S.D.N.Y. Apr. 10, 2014) (appointing as lead plaintiff alleged "high-volume trader or a day trader" who placed orders "in small batches over the course of several days").

[5] See Declaration of Constantine P. Economides, Ex. A at 8-9 (Pomerantz arguing that "even assuming *arguendo* that Doherty were a day trader, courts in this Judicial District and elsewhere have routinely appointed purported day traders as lead plaintiffs"); *id.*, Ex. B at 5-6 (Pomerantz arguing that "assuming *arguendo* that Alavi was a daytrader . . . it would not be fatal to his appointment as Lead Plaintiff, as Courts throughout the country recognize that where false and misleading information has been spread into the market by defendants, all types of traders, including daytraders, are impacted and therefore are adequate and typical to bring claims on behalf of all class members"); *id.*, Ex. C at 9-10 (Pomerantz arguing that "courts have rejected the proposition that day traders may not be able to rely on the fraud on the market theory of reliance"); *id.*, Ex. D at 10 (RGRD arguing that "the prevailing view . . . is that day and momentum traders have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts").

and 3/4/21); and ECF No. 14-2 (Mr. Ernst bought and sold shares within the same day on 7/29/20, 4/26/21, 4/29/21). Under similar circumstances, courts have recognized that, given the prevalence of this strategy, an investor who "alternate[s] between purchases and sales throughout the class period . . . is 'not atypical in a class that contains . . . numerous sophisticated [ ] investors." *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 360 (S.D.N.Y. 2016) (appointing investor who conducted "in-and-out" trading throughout the Class Period). Thus, even if Mr. Kaintz performed some day, momentum, or in-and-out trading in DraftKings securities, such trading does not render him atypical or inadequate.[6]

Finally, while an "'[i]n-and-out' trader who sells all of his shares before a company discloses information that corrects an earlier mistake may be subject to a unique defense insofar as he is unable to establish 'loss causation'"— Mr. Kaintz is not such a trader because he did not sell all his shares before the disclosure; the opposite is true as ***he held over 100,000 shares at the time of disclosure***. *See* ECF No. 21-1; *see also Wilson v. LSB Indus., Inc.*, No. 15-cv-7614 (RAG)(WG), 2018 WL 3913115, at *6 (S.D.N.Y. Aug. 13, 2018) (citing *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 487 (S.D.N.Y. 2011)); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009); *BlackBerry*, 2021 WL 253453, at *11 ("In-and-out traders are those who both purchase and sell all of their shares prior to a corrective disclosure.'"); *In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15-cv-1249, 2017 WL 2062985, at *3 (S.D.N.Y. May 15, 2017) (appointing class representative who "engaged in significant in-and-out trading during the class period" because "it held over thirty thousand shares through the first corrective disclosure, which

---

[6] To be sure, no movant can even establish Mr. Kaintz is a "day trader." Multiple trades on a particular day do not, standing alone, evidence "day trading" as opposed to other trading strategies. For example, it is not always possible to trade entire blocks of shares either on a purchase or sale, and thus shares must be broken into smaller amounts or otherwise layered in multiple transactions over several days.

subjects it to the same wrongful acts as the remainder of the class"); *cf. Topping v. Deloitte Touche Tohmatsu CPA,* 95 F. Supp. 3d 607, 617 (S.D.N.Y. 2015) (court acknowledged that in addition to not having the greatest financial interest, movant would be an inappropriate lead plaintiff because "Jayhawk was a complete 'in-and-out trader'—buying and selling into and out of the securities at issue during the class period—and sold all its shared before the initial March 26, 2012 disclosure"); *Bensley v. FalconStor Software, Inc.,* 277 F.R.D. 231, 240 (E.D.N.Y. 2011) (same); *Porzio v. Overseas Shipholding Grp.*, No. 12-cv-7948, 2013 WL 407678, at *3 (S.D.N.Y. Feb. 1, 2013) (same).

Finally, there is no credible or otherwise viable argument that Mr. Kaintz's reasons for investing in DraftKings render him atypical. He has sworn, unequivocally, that his purchases of DraftKings securities were "based on [his] analysis of the stock" ECF No. 21-3, ¶2. Therefore, there is no evidence that he traded based on some idea or plan divorced from Defendants' fraud; in fact, the evidence demonstrates he was defrauded by Defendants alleged misconduct. ECF No. 21-3, ¶2. Indeed, in rejecting challenges to the reasons stocks were purchased, courts in this District have held that "[e]ach of these methods of making investment decisions is representative of methods used by many other investors," and "[e]ach of the methods reflects an evaluation of the publicly available information about [the issuer] . . . ." *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 281-82 (S.D.N.Y. 2003). Furthermore, "[c]ourts have rejected the argument that the use of sophisticated investment strategies disqualifies a party from serving as lead plaintiff or necessarily undermines reliance, particularly at this stage of the litigation." *Chauhan*, 2021 WL 235890, at *6.

Accordingly, Mr. Kaintz's trading history does not render him atypical. Indeed, his purchases of, and retention of, DraftKings securities are typical of the other Class members, as evidenced by the trading history presented by the competing movants.[7]

     ii.    <u>Miniscule options trading does not subject Mr. Kaintz to unique defenses.</u>

While the overwhelming majority of Mr. Kaintz's trading activity is in common stock (99.98%), he did engage in a diminutive amount of options trading (0.01%). This miniscule amount of options trading (where he actually made money) does not rebut his presumptive lead plaintiff status – as the loss amounts detailed above already reflect deductions for all money earned on options. In other words, even with his gains from options trades, Mr. Kaintz still **lost** $2,242,155 (LIFO) or $1,918,875 (*Dura*-adjusted LIFO) on common stock purchases.

Moreover, "investors who traded in options can be appointed lead plaintiff when the focus of the typicality analysis is, as here, 'whether the same or similar injuries arose out of or were caused by Defendants' alleged wrongful course of conduct.'" *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 350, 355 (S.D.N.Y. 2011) (appointing lead plaintiff that "traded in both common stock and options"). Courts in this District have appointed as lead plaintiff applicants who traded in "significant options trades" because, like Mr. Kaintz, they did "not claim any losses from options trading" and "the majority of [claimed] losses, or trades, were [not] through options." *Chauhan*, 2021 WL 235890, at *7. Further, courts have found no issue with appointing as lead plaintiff applicants who had some option trading when the amount of options compared to stock is low. *See, e.g., In re Donkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997) ("In view of the fact that Emanon Partners, L.P. held almost six times as much common stock as it did options, [it]

---

[7] *See also Gordon v. Sonar Cap. Mgt. LLC*, 962 F. Supp. 2d 525 (S.D.N.Y. 2013) ("That Tauber traded outside the market range does not, however, necessarily imply that he did not rely on the assumption that the market price reflected all available information.").

does not lack typicality or adequacy under Rule 23(a) for the purpose of determining the lead plaintiff."). As stated above, during the Class Period, Mr. Kaintz spent $175,002,301 on purchases of DraftKings common stock, but only $20,998 on options. *See* ECF No. 21-2. Expressed as a multiple—as done by the *Donkenny* court—Mr. Kaintz's shares of common stock were ***over 8,334x*** his options. *See id.*; 171 F.R.D. at 158.

Even if Mr. Kaintz's trading activities were not so heavily skewed to common stock purchases, his options trading would still not present a bar to appointment. "[T]he Securities Exchange Act's broad definition of 'security,'" has resulted in courts "appoint[ing] as lead plaintiff purchasers of a wide variety of financial instruments," and courts "often appoint purchasers of one type of securities to represent purchasers of other types of securities of the same issuer where the interests of those purchasers are aligned." *Freudenberg v. E\*Trade Fin. Corp.*, No. 07-cv-8538, 2008 WL 2876373, at \*6 (S.D.N.Y. July 16, 2008) (collecting cases). Indeed, courts throughout this Circuit are aligned.[8]

In sum, Mr. Kaintz's minute amount of option trading does not rebut his presumptive lead plaintiff status, as the focus of typicality is "whether the same or similar injuries" as his stock losses "arose out of or were caused by Defendants' alleged wrongful course of conduct." *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123–24 (S.D.N.Y.2001). And while Mr. Kaintz made money on some options, he lost significantly more on his common stock purchases.

---

[8] *See In re SLM Corp. Sec. Litig.*, No. 08-cv-1029 (WHP), 2012 WL 209095, at \*10 (S.D.N.Y. Jan. 24, 2012) (appointing investor that traded in options and common stock as class representative over class that bought "common shares"); *Lifschitz v. Hexion Specialty Chems., Inc.*, No. 1:08-cv-06394, ECF No. 27 at 5-6 (S.D.N.Y. Feb. 17, 2009) (appointing put options trader as lead plaintiff); *In re Priceline.com Inc.*, 236 F.R.D. 89, 93, 98 (D. Conn. 2006) (appointing options trader as class representative over a class "who purchased or otherwise acquired securities of priceline.com Inc."); c*ompare Micholle v. Ophthotech Corp.*, No. 17-cv-210 (VSB), 2018 WL 1307285, at \*9 (S.D.N.Y. Mar. 13, 2018) (finding an investor who "traded ***almost exclusively*** in put and call options" to be "atypical plaintiffs").

To be sure, Mr. Kaintz expressly attested that, based on his "substantial losses, [he is] motivated to seek the best possible result for [him]self and the proposed class." ECF No. 21-3, ¶3.[9]

Mr. Kaintz is entitled to the PSLRA's presumption as the "most adequate plaintiff," and no viable non-speculative proof exists to rebut that presumption. Therefore, he should be appointed as lead plaintiff.

### C.     Mr. Kaintz's choice of counsel should be approved.

The Court should approve Mr. Kaintz's selection of Roche Freedman as Lead Counsel for the Class. The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(v). The record confirms that Mr. Kaintz's selection of counsel should be approved; Roche Freedman is qualified, experienced, and capable of effectively prosecuting this Action on behalf of him and the Class. *See* ECF No. 23, pp. 11-13; ECF No. 21-4. After the filing of Mr. Kaintz's Motion, for example, Roche Freedman (serving as Co-Lead counsel) received preliminary approval on a $10.5 million settlement in a securities class action. *See Lowry v. RTI Surgical Holdings, Inc., et al.*, No. 1:20-cv-01939, ECF No. 99 (N.D. Ill. Sept. 10, 2021).

### D.     All competing Lead Plaintiff motions should be denied.

Pursuant to the PSLRA's sequential process, "the Court does not need to determine whether other competing movants may be more typical or adequate than the presumptively adequate plaintiff." *Chahal v. Credit Suisse Grp. AG*, No. 18-cv-02268 (AT)(SN), 2018 WL 3093965, at *2 (S.D.N.Y. June 21, 2018), *objections overruled sub nom. Chahal v. Credit Suisee Grp. AG*, No. 18-cv-2268 (AT)(SN), 2018 WL 6803377 (S.D.N.Y. Aug. 27, 2018). "So long as

---

[9] Although Mr. Kaintz's PSLRA certification does not include his option trading due to a clerical error, his moving papers, including his loss chart, accurately include his options trading and set forth his total losses from trading DraftKings securities.

the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Khunt v. Alibaba Grp. Holding Ltd.,* 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015). As demonstrated *supra*, Mr. Kaintz has the largest financial interest in this Action, has made a preliminary showing of his typicality and adequacy, and faces no proof to rebut the statutory presumption in favor of his appointment as lead plaintiff. Accordingly, under the PSLRA, all competing motions must be denied.

## III. CONCLUSION

For the foregoing reasons and those set forth in his Motion, Mr. Kaintz respectfully requests that the Court appoint him as lead plaintiff, approve his selection of Roche Freedman as lead counsel for the Class, and deny all competing motions.

DATED: September 15, 2021 Respectfully Submitted,

**ROCHE FREEDMAN LLP**

*/s/ Constantine P. Economides*

Constantine P. Economides
Velvel (Devin) Freedman
Ivy T. Ngo (*pro hac vice* forthcoming)
1 SE 3rd Ave., Suite 1250
Miami, Florida 33131
Telephone: (786) 924-2900
Emails: ceconomides@rochefreedman.com
vel@rochefreedman.com
ingo@rochefreedman.com

*Counsel for Lead Plaintiff Movant Tim Kaintz and Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac vice* forthcoming)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
Email: brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Movant Tim Kaintz*

16

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on September 15, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ Constantine P. Economides
Constantine P. Economides